## Case No. 1,420.

### In re BININGER et al.

[7 Blatchf. 262.] [1]

Circuit Court, S. D. New York. June 4, 1870. [2]

INVOLUNTARY BANKRUPTCY — AMENDMENT OF PETITION—MOTIVE OF PETITIONER—ACT OF BANKRUPTCY — INSOLVENCY — APPOINTMENT OF RECEIVER—INTENT.

1. The district court, on the trial before a jury, as to the fact of bankruptcy, in an involuntary proceeding under section 39 of the bankruptcy act of March 2, 1867, (14 Stat. 536,) has power to permit an amendment of the creditor's petition.

[See In re Craft, Case No. 3,316; In re Gallinger, Id. 5,202.]

2. What constitutes insolvency, under section 39 of that act, defined.

[See Warren v. Tenth Nat. Bank, Case No. 17,202.]

3. An order of a state court appointing a receiver of the property of a debtor is "legal process," within the meaning of section 39 of that act. The appointment by a state court of a receiver of the property of a debtor, for the purpose of paying his debts, defeats and delays the operation of that act.

[Cited in Re Stuyvesant Bank, Case No. 13,-581; Re Safe-Deposit & Sav. Inst., Id. 12,-211; Re Hathorn, Id. 6,214.]

4. Where a debtor voluntarily procures his property to be taken on legal process, and the effect of such taking is to defeat or delay the operation of that act, he must be held to have intended to produce such effect.

[Cited in Warren v. Delaware, L. & W. R. Co., Case No. 17,194.]

5. For a solvent trader to suspend payment and not resume within fourteen days is fraudulent as against his creditors, and is an act of bankruptcy, within section 39 of that act.

[See Vanderhoof v. City Bank, Case No. 16,-842; In re Ess, Id. 4,530.]

6. In a proceeding in involuntary bankruptcy against two debtors, where only one of them contests the fact of bankruptcy, it is not proper, the acts of bankruptcy being established, to inquire into the motive of the petitioners in prosecuting the petition, or into the fact of the co-operation of the other debtor with the petitioners, or into his motive for doing so.

[Appeal from the district court of the United States for the southern district of New York.

[In bankruptcy. Petition by William J. Hardy and others to have Abraham Bininger and Abraham B. Clark adjudged bankrupts. Decree for petitioners. Case No. 6,058. Clark petitions for review of the adjudication, which was affirmed.]

This was a review of an adjudication of bankruptcy made by the district court, after a trial by a jury. The charge of the district judge (Blatchford, District Judge) to the jury was as follows: The 39th section of the bankruptcy act [March 2, 1867; 14 Stat. 536] provides, that any person residing within the jurisdiction of the United States, and owing debts provable under the act, exceeding the amount of three hundred dollars, who, after the passage of the act,

being bankrupt or insolvent, or in contemplation of bankruptcy or insolvency, shall procure or suffer his property to be taken on legal process, with the intent, by such disposition of his property, to defeat or delay the operation of the act, shall be deemed to have committed an act of bankruptcy, and, subject to the conditions thereinafter prescribed, shall be adjudged a bankrupt on the petition of one or more of his creditors, the aggregate of whose debts provable under the act amounts to at least two hundred and fifty dollars. The condition is then prescribed by the same section, that the petition shall be brought within six months after the act of bankruptcy has been committed.

In the present case, it is alleged in the petition, that Abraham B. Clark and Abraham Bininger, composing the firm of A. Bininger & Co., have, for the period of six months preceding the date of the filing of the petition, resided and transacted business at the city of New York; that the petitioners' demand is provable against them, in accordance with the bankruptcy act; that they owe debts to an amount exceeding the sum of three hundred dollars; and that the petitioners' demand exceeds the sum of two hundred and fifty dollars. The debts due to the petitioners are then set out, being the two promissory notes which have been proved in evidence. The petition then avers, that, on or about the 19th day of November, 1869, which was within six months prior to the bringing of the petition, the said Abraham B. Clark and Abraham Bininger, being bankrupt and insolvent, and in contemplation of bankruptcy or insolvency, did procure and suffer their property to be taken on legal process, to wit, under and by virtue of an order made by one of the justices of the superior court of the city of New York, appointing one Daniel H. Hanrahan receiver of all the property and effects of the said firm of A. Bininger & Co., and which said order was procured by the said Abraham B. Clark to be made in an action in the said court, wherein the said Abraham B. Clark was plaintiff and the said Abraham Bininger was defendant, and that the said receiver was suffered to take possession of said property under said order, with the intent, by such disposition of their property, to defeat and delay the operation of the said bankruptcy act. These allegations are directly within the language of the act.

As to the existence of the formal facts necessary to confer jurisdiction on this court—the residence of the debtors within the jurisdiction of the United States, the owing by them of the required amount of indebtedness, and the presentation of the petition by creditors holding the required amount of indebtedness, to the proper court, and within the six months after the commission of the alleged act of bankruptcy—

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

[2] [Affirming Case No. 6,058.]

there is no dispute. There remain only three questions for consideration: (1.) Were Clark and Bininger insolvent when they committed the alleged act of bankruptcy? (2.) Did they procure or suffer their property to be taken on legal process? (3.) Was the act complained of done with the intent, by such disposition of their property, to defeat or delay the operation of the bankruptcy act?

The word "insolvency," as used in the bankruptcy act, as it has been interpreted, I believe, by all the judges of the courts of the United States who have passed upon it, means, when applied to traders such as these debtors were, simply this—an inability to pay debts, as they mature and become due and payable, in the ordinary course of business, as persons carrying on trade usually do, in that which is made, by the laws of the United States, lawful money and a legal tender to be used in the payment of debts, without reference to the amount of the debtor's property, and without reference to the possibility or probability, or even certainty, that, at a future time, on the settlement and winding up of all his affairs, his debts will be paid in full out of his property. Bayly v. Schofield, 1 Maule & S. 338; Thompson v. Thompson, 4 Cush. 127, 134; Lee v. Kilburn, 3 Gray, 594, 600; Herrick v. Borst, 4 Hill, 650, 657; Barnard v. Crosby, 6 Allen, 327, 331; Buckingham v. McLean, 13 How. [54 U. S.] 167; Merchants' Nat. Bank v. Truax, [Case No. 9,451;] In re Gay, [Id. 5,279;] Graham v. Stark, [Id. 5,676.] Under the 11th section of the act, which provides for petitions in bankruptcy by debtors, all that is necessary to enable a debtor to become a voluntary bankrupt is, that he shall reside and owe debts as therein required, and shall apply, by petition addressed to the proper judge, setting forth his inability to pay all his debts in full, his willingness to surrender all his estate and effects for the benefit of his creditors, and his desire to obtain the benefit of the act. This inability to pay debts, mentioned in the 11th section, is the same thing as the insolvency mentioned in the 39th section. It means the inability of the debtor, then and there, to pay accruing debts, as they mature, in the ordinary way, in the usual course of the business of trade, in that which is made by the law of the United States a lawful tender in the payment of debts. Nothing else is a legal tender in payment of debts but that which is declared by the law of the United States to be lawful money and such legal tender. Property is not a lawful tender in payment of debts, and a debtor has no right to pay a debt with property of any kind. Therefore, the amount of the trader's property is of no consequence, if such inability exists to pay matured debts in such lawful money.

In this case, the evidence on the question of insolvency all points to one conclusion. Mr. Clark testifies, not merely that he and his firm had not, on and after the 4th of November, 1869, and down to and including the 19th of November, 1869, the lawful money wherewith to pay the debts of the firm as they matured, but that, after the most earnest and strenuous efforts, he and the firm were unable to obtain such lawful money. Being so without it, he and his co-partner and the firm were insolvent. On the 19th of November the business of the firm as traders was stopped and broken up, and their whole property was put into the hands of a receiver on that day. Under such circumstances, Mr. Clark would have had a right to present a voluntary petition to this court, under the 11th section of the act, either without or in conjunction with his co-partner, setting forth the inability of the co-partners to pay all their debts in full, notwithstanding he or they might have thought that, in the end, such debts would be paid in full out of the property of the debtors. The evidence being all one way, and there being no dispute about the fact of insolvency, on the law as above defined, it is the duty of this court to hold that there is no question of fact for the jury, as to whether the debtors were insolvent or not on the 19th of November. Schuchardt v. Allens, 1 Wall. [68 U. S.] 369. It is perfectly clear that they were then insolvent.

The second question is, as to whether the debtors procured or suffered their property to be taken on legal process, on the 19th of November. The debtor Bininger, by making no answer to the petition, confesses its allegations. As to the debtor Clark, there is no disputed question of fact, on this branch of the case. It appears in evidence, from the written complaint filed by Mr. Clark, in the suit brought by him in the superior court of the city of New York, against his co-partner Bininger, and which is verified by him, that he prayed that court, in such complaint, that a receiver of the property, rights and good will of said partnership might be appointed, with power to dispose of the same for the benefit of all parties entitled thereto, and that the proceeds thereof might be divided among the partners, after the payment of all just debts of such partnership. This was a prayer to the said court, on the part of Mr. Clark, to take possession of the property of the partners by legal process. This action was followed up by an order made by the said court, on the 19th of November, directing that Daniel H. Hanrahan be appointed receiver of all the debts, property, equitable rights and things in action belonging to said partnership, with power to dispose of the same for the benefit of all parties concerned, according to law. It further appears in evidence, that such receiver complied with the requirements of such order, that he should execute and file an official bond, upon doing which he was to be invested with all the rights and powers of his receivership. It also appears, that he has actually taken pos-

session of said property under the order. Such order is legal process. It is process for the taking of property, issued in a legal proceeding, as much as an attachment or an execution. The fact that the act of congress, the paramount law of the land, enacted under the authority of the constitution of the United States, which all judicial officers, federal and state, are bound and sworn, by oath or affirmation, to support—the fact that the bankruptcy act makes, in broad terms, the procuring or suffering property to be taken on legal process, with certain attendant circumstances, an act of bankruptcy, shows, that the circumstance that the property is taken on legal process issued out of a court of a state, furnishes no ground for withholding an adjudication of bankruptcy. On the contrary, in view of the well-known fact, that the mass of civil legal process is issued out of the courts of the states all over the United States —courts of justices of the peace and courts of record—and that the amount of property taken on civil legal process issued out of the federal courts is comparatively very small, it is evident, that congress intended to say, that the taking of property on legal process issued out of a court of a state is an act of bankruptcy, when accompanied by the other conditions specified in the 39th section of the act. The property in this case was taken on the process. This process was issued by a court of justice, and was a legal and proper process. It carried on the face of it a right to the receiver to take possession under it of the property named in it. It was, therefore, in the sense of the act, "legal process." There is, then, no question of fact to be submitted to the jury as to the second head of inquiry.

The next question is, as to the intent with which the procuring or suffering was done. To be within the 39th section, it must have been an intent, by such disposition of their property, to defeat or delay the operation of the bankruptcy act. The matter of intent is illustrated by a familiar principle of law. Where an individual is charged with the offence of assault with a deadly weapon, with intent to kill, if it be shown that he knowingly and voluntarily pointed a loaded pistol at a vital part of another human being, the law declares that the natural, inevitable consequence of that act is to kill, provided the pistol is fired; and the individual cannot be heard to say, that he had no intent to kill, the pistol being so pointed at a vital part, provided he had an intent, with such weapon so pointed, to fire it, and did fire it. The intent must be judged of with reference to the voluntary action of the individual. That is the true rule in all cases of the kind. In the present case, as the necessary and inevitable consequence of the transfer of the property referred to, to the receiver, was to defeat the operation of the bankruptcy act in regard to that property, then, if the debt-

ors voluntarily procured or suffered such property to be so taken on such legal process, when they were sane, when they were not under duress, when the procuring or the suffering was voluntary, the law conclusively presumes that they had the intent to defeat the operation of the bankruptcy act. This must be so; otherwise, no laws, civil or criminal, could ever be administered. Every person is presumed to intend the natural and probable consequences of his own acts, and, if it be shown that the consequences naturally follow the acts, it is competent to infer the intent, in doing the acts, to effect such consequences. Denny v. Dana. 2 Cush. 160, 172; Beals v. Clark, 13 Gray, 18, 21. The rule is thus stated by Judge Hall, of the northern district of New York, in the recent case of In re Smith, [Case No. 12,974:] "Every person of a sound mind is presumed to intend the necessary, natural or legal consequences of his deliberate act. This legal presumption may be either conclusive or disputable, depending upon the nature of the act and the character of the intention. And when, by law, the consequences must necessarily follow the act done, the presumption is ordinarily conclusive, and cannot be rebutted by any evidence of a want of such intention." There are many decisions by the courts of the state of New York, to the effect that, notwithstanding the denial of an intent to commit a fraud or to produce a forbidden result, such intent will often be conclusively presumed. Cunningham v. Freeborn, 11 Wend. 240; Waterbury v. Sturtevant, 18 Wend. 353; Fiedler v. Day, 2 Sandf. 594; Robinson v. Stewart, 10 N. Y. 189; Barney v. Griffin, 2 Comst. [2 N. Y.] 365; Collum v. Caldwell, 16 N. Y. 484. In the present case, the denial by Mr. Clark of an intent to defeat or delay the operation of the bankruptcy act is of no consequence, provided he had the intent to procure the appointment of the receiver, and procured such appointment, and suffered the property to be taken by such receiver, and did these things knowingly and while he was sane and not under duress. If so, then the law conclusively presumes that he had the intent to effect the result which would necessarily and inevitably follow. That result was a defeating of the operation of the bankruptcy act in respect to such property, if the receivership over it should remain undisplaced.

On the question of intent, the evidence is, that Mr. Clark signed and verified, and caused to be presented, the complaint in the state court, containing the prayer to which I have referred. This, followed by the appointment of the receiver, and by his taking possession of the property, would certainly bring Mr. Clark within the category of suffering the property to be taken on legal process, if it did not bring him within the category of procuring it to be so taken. Mr. Bininger confesses, by his default, that he suffered it to be so taken. The suspension of payment

by the firm occurred on the 4th of November, and the receiver was appointed and took possession of the property on the 19th of November. It appears, therefore, that the period of fifteen days elapsed between the time when the firm became insolvent and the time when its property was taken on the legal process. Mr. Clark testifies that the proceeding for the appointment of a receiver was taken with his knowledge and consent, and that he was told that the receiver would take possession of the property of the firm. The evidence is conclusive that Mr. Clark knew what he was doing, and was of a sound mind, and did not act under any duress. Under such circumstances, the bankruptcy act is plain in its requirements. When a merchant or trader is insolvent, that is, unable to pay his debts, as they mature, in the ordinary course of business, as the term "insolvency" has been interpreted to you by the court, it is his duty to come at once into the bankruptcy court, under the protection of this law, and submit his property to that court for adjudication and distribution; and a mode is provided by the act for bringing in his co-partner who will not come in voluntarily.

It follows, therefore, that there is no question of fact to be submitted to you in this case. On the law, as applicable to the undisputed facts, I can perform my duty in no other way than to direct you to render a verdict for the creditors as to the act of bankruptcy to which I have directed your attention, namely, that these debtors, being insolvent, did, on the 19th of November, 1869, suffer their property to be taken on such legal process, with the intent, by such disposition of that property, to defeat the operation of the bankruptcy act of the United States; and it is your duty to render such verdict. I direct that verdict, accordingly.

The jury having, in accordance with such direction by the court, rendered a verdict for the creditors, as to the act of bankruptcy referred to, and an order of adjudication having been made, Clark brought a petition of review.

Charles F. Sanford and Mansfield Compton, for Clark.

Francis N. Bangs, for creditors.

WOODRUFF, Circuit Judge. Abraham Bininger and Abraham B. Clark composed the firm of Abraham Bininger & Co., who, for many years, carried on business in this city as merchants and traders. On the petition of William J. Hardy and others, creditors of the firm, they were, on the 22d of December, 1869, decreed bankrupt, and Clark has brought into this court for review the proceedings had in the district court upon that petition, and the decree pronounced thereon.

The petition, as originally filed, alleged, as acts of bankruptcy, that Bininger and Clark had fraudulently stopped, and had not resumed, payment of their commercial paper within a period of fourteen days; and that they, on the 19th of November, 1869, did, in substance, effect a transfer of all their partnership property to one Daniel H. Hanrahan, under color of the appointment of said Hanrahan to be a receiver of the property of the firm, procured by Clark in a proceeding instituted in the superior court of the city of New York against Bininger, and suffered by the said Bininger, with intent to hinder and delay the creditors of the firm. Clark alone appeared and answered this petition. By his answer he denied that he or his said firm had "committed an act of bankruptcy set forth in the said petition or otherwise," and demanded a trial by jury. He alleged, in his answer, that neither he nor his said firm were insolvent, but were, on the contrary, fully able to pay all their just debts and liabilities and have a large surplus. He admitted that, on the 19th of November, 1869, he commenced an action in the aforesaid court, against his co-partner, Bininger, praying for a dissolution and an accounting, and for the appointment of a receiver; and that such court did appoint the receiver, and he, on the same 19th of November, took possession of the property of the firm in this city, and was in possession when the petition of the creditors was filed. He further alleged, that such petition was filed by collusion between his co-partner Bininger and their creditors.

On the trial, and upon the examination of Clark on his own behalf, the petitioning creditors obtained leave to add further allegations to their petition, by way of amendment. To the granting of such leave Clark objected and excepted. By the amendment the petitioners further charged, that the debtors, on the 19th of November, 1869, being bankrupt and insolvent; and in contemplation of bankruptcy or insolvency, made a grant, sale, conveyance and transfer of their property, estate, effects, rights and credits to the before-mentioned Hanrahan, with intent thereby to defeat and delay the operation of the bankrupt act, and procured and suffered their property to be taken on legal process, to wit, under and by virtue of the before-mentioned order appointing Hanrahan receiver, which was procured by the said Clark, and the said receiver was suffered to take possession, &c., with the intent, by such disposition of their property, to defeat and delay the operation of the said act of congress, and to delay, defraud, and hinder the creditors of the said debtors.

The allegation thus added to the petition, Clark answered by a denial. Bininger thereupon appeared in form by his solicitor, but made no answer to the petition. The trial then proceeded, and, at the close of the testimony, the judge charged the jury, in effect, that the petitioning creditors were entitled to a verdict finding that the debtors, being insolvent, did, on the 19th of November, 1869,

suffer their property to be taken on legal process, with the intent, by such disposition of that property, to defeat the operation of the said act of congress.

(1.) In my judgment, there was no error in permitting an amendment of the petition. It belongs to courts of justice, as the general rule, to permit amendments of proceedings before them, where they have obtained jurisdiction of the person and of the subject-matter; and it would be strange if the district court, in the administration of the bankrupt law, should be held incompetent to allow such amendments. The exercise of the power may often be indispensable to the complete attainment of justice. The general orders in bankruptcy made by the supreme court contemplate the exercise of this power, and are, at least, evidence that the supreme court deemed that such amendments might lawfully be allowed. See General Order 14. Here, Clark answered the amended petition, and the issue thereby created was tried and determined.

(2.) On the question, what constitutes insolvency in a trader, I concur in the views expressed by the district judge on the trial; and they have singular aptness to the present case. The alleged bankrupts owed a very large sum of money. They had been struggling for months, in a condition of great embarrassment, to raise money for the payment of their obligations as they matured. They used means ordinary and extraordinary, until even such means failed to procure them funds, submitting to sales of their own paper at an enormous discount, for that purpose. It is clear that, if they had been able to raise money by continuing to enlarge their liabilities in the future at such a rate, in order to meet their payments, the loss would have absorbed their entire estate. Their real estate in this city was incumbered. They had real estate in Virginia, which they had been long endeavoring in vain to dispose of and convert into some available form; and, at length, they stopped payment, for the want of funds wherewith to pay. This, in my judgment, constituted insolvency, within the meaning of that term, as used in the bankrupt law.

On a question of this kind, in Thompson v. Thompson. 4 Cush. 127, 134, Chief Justice Shaw says: "By the term insolvency, as used in these statutes, we do not understand an absolute inability to pay one's debts at some future time, upon a settlement and winding up of all a trader's concerns; but a trader may be said to be in insolvent circumstances, when he is not in a condition to pay his debts in the ordinary course, as persons carrying on trade usually do." This is the only construction which I think is adapted to give effect to the act of congress, for the beneficial purposes for which it was designed. Without this, a trader's property may be wasted, preferences among creditors given, and other transfers of his property effected, wholly inconsistent with the intent of the act. To hold that the probability that, if the estate should be judiciously managed, it would, after the lapse of some indefinite time, at prices corresponding with its then present estimated value, produce enough to pay the creditors. if they also would wait and not force sales by judgments and executions, is to constitute proof of solvency, within the meaning of the law, would be neither sensible nor just. The contrary is held in Lee v. Kilburn, 3 Gray, 594, 600; in Shone v. Lucas, 3 Dowl. & R. 218; and in Bayly v. Schofield, 1 Maule & S. 338, 350. The late learned chancellor of this state, I recollect, used to express and apply the rule above stated by Chief Justice Shaw, and the district judge has, in his charge, cited numerous other cases from this and other states, to the same effect.

I have no doubt that the charge of the court below was correct upon that point. By this, however, I do not mean to say, that in every instance of temporary want of money to pay debts coming to maturity, insolvency is to be inferred. This would be tantamount to saying that, whenever a trader suffers a note to go to protest for want of funds in hand wherewith to pay, he can thereupon be adjudged insolvent. This would be an extreme view. Here, the debtors were shown to be permanently in that condition, and they could not be delivered therefrom, if at all, except by extraordinary means, out of the course of business; and even extraordinary means had been resorted to and had failed.

(3.) The remaining question is, whether, the firm being insolvent, it was an act of bankruptcy to apply to the state court, procure the appointment of a receiver and an order for the delivery of the property of the firm to him, and thereby prevent the operation of the bankrupt law upon the property and the administration thereof.

I concur with Judge Blatchford, that the term "legal process." as used in the bankrupt law, is not to be confined to any particular form of writ, execution or attachment. An order of sale to be executed by a master in chancery is. in a just and proper sense, legal process, though, in a technical sense, writs. executions, attachments and the like, running in the name of the people, and addressed to a sheriff or like officer, are usually meant by that term. The writ, mandate, or order of a court, taking hold of the property, and withdrawing it from the possession and control of the debtor, and from the ordinary reach of creditors for the payment of what is due to them, are each and either of them, within the intent and true meaning of the term, legal process, as here employed.

Was this, then, done, with intent to defeat or delay the operation of the bankrupt act? It is entirely clear that its effect was to do both.

In the discussions of this subject, had before me, it has been, in substance, insisted, that a proceeding in the state court for winding up the business of a co-partnership, settling the accounts between the partners, and paying the co-partnership debts, through a receiver, was the appropriation of the property just as an administration under the bankrupt act would appropriate it; that, therefore, such a proceeding cannot be said to defeat the operation of the bankrupt act; and that, on the contrary, it effectuates the very purpose and object of that act, by paying the creditors without preference. In the first place, it does absolutely defeat the operation of the bankrupt act, by withdrawing the property from any administration under it. Whether some other administration, either through a receiver or a voluntary assignee, is wiser and better or not, whether the end will be the same, if those modes are carried into honest and faithful execution or not, the operation of the bankrupt act is equally defeated. For, be it observed, the statute does not say, with intent to defeat or prevent the result which the bankrupt law is intended ultimately to accomplish, namely, the appropriation of the property to the payment of the debts, but it does say, with intent to defeat or delay the operation of the act. Withdrawing the property from the reach of that law and the means which it provides to secure the intended result, does effectually, in respect of that property, defeat the operation of the act.

The design and purpose of the bankrupt law is, that the property of insolvents shall be secured to their creditors in the very mode pointed out thereby, with all the facilities for its appropriation, all the security for its administration, all the safeguards against fraud, all the protection against devices to establish false claims, fictitious debts and illegal or inequitable preferences, which that act provides, and in the summary manner in which the proceedings may be conducted. It is not, therefore, for the debtors or for the debtors and some of the creditors to say. we can devise a better or safer or more economical mode of reaching the same final result. If it were true, it would be only saying, we will resort to an expedient to defeat the bankrupt law, and our reason therefore is, that we think our plan is wiser and better than that which congress has seen fit to prescribe.

But the administration of the property under a receiver in such a suit does not necessarily accomplish the same result. It is not necessary to enlarge upon this to anticipate all possible differences, but reference may be made to various provisions of the bankrupt law, such as, requiring the surrender of securities as a condition of participation in the bankrupt's estate, (section 20;) excluding claims deemed fraudulent under the act, (sections 22, 39;) denying to creditors who have received or taken securities, with reason to believe in the insolvency of the debtor, and for the purpose of obtaining a preference, any share of the estate, (section 23;) and excluding those who may have received security or property as a consideration for not opposing a discharge, (section 35.) These subjects would find no place in the administration of the estate under the state laws, through a receiver. There are, also, summary means of investigation and enquiry peculiar to the bankrupt law and not known to the other proceeding. So, too, the subject of making dividends from time to time is committed to the determination of creditors, (section 27;) several classes of debts are declared entitled to a preference and to payment in full in priority to others, (section 28;) and special modes of determining disputed claims are provided, (section 6.) There are, doubtless, other differences between the administrations under the bankrupt law and by a receivership under the state laws, but the above are sufficient to show that the two are wholly inconsistent and that the latter defeats the former.

To this it seems hardly necessary to add, that the taking of the property by a receiver for administration delays the operation of the act; for, it cannot reach the property at all as to the co-partnership debts, and, as to individual creditors, if it should turn out that there is any thing for them, they must wait the termination of the entire proceedings under the receivership before the assignee in bankruptcy appointed for them, can reach it. A proceeding which must pass through all the ordinary forms of litigation, and which is susceptible of almost indefinite protraction, through orders, appeals, rehearings, &c., is substituted for the summary proceeding which the act of congress provides.

It is claimed, on behalf of Clark, that, although all this may be true, yet this necessary result of his action in the matter was not the motive which influenced him; that it was not for the purpose of accomplishing this defeat of the operation of the bankrupt law that he proceeded to the appointment of a receiver; that other considerations were the moving cause; and that, therefore, it cannot be said that he intended the results pointed out.

It seems unnecessary to say anything in addition to the reasoning of the district judge upon this point, and that of Judge Hall, in the northern district, in the case of In re Smith, [Case No. 12,974,] and to what is said in Denny v. Dana, 2 Cush. 160, 172, and Beals v. Clark, 13 Gray, 18, 21. It is no novel doctrine. The debtor must be taken to know the law, and to know the precise legal effect of his act. He did certainly intend the act and all the legal consequences of the act.

It is easy to confound motive with intent, and that has been done, I think, in the discussion of this case. It was done by the debt-

or, Clark, in his testimony. No doubt he testified truthfully, when he said, in substance, that he did not procure the appointment of a receiver with the intent to defeat the operation of the bankrupt law. I have no doubt he meant by this, that defeating or delaying the operation of the bankrupt act was not the motive which induced him to procure such appointment. He did intend to do the very thing which hinders and defeats that act, and, in judgment of law, he knew when he did it that it would have that effect. Knowing the effect, he must have intended to produce it, when he voluntarily chose to do the act. Whatever his motive was, he acted voluntarily in choosing, and, therefore, in intending all the legal results which would flow from his action in the matter.

There is an alternative view of this subject which would induce me to affirm the decree in this case, if I deemed it doubtful whether a state of insolvency within the meaning of the law existed, and which is so conclusive that a reversal and an order for a new trial would be useless and, therefore, improper. It is alluded to in the charge of Judge Blatchford. If the firm was not insolvent, they had the means of paying their debts. It is now insisted, on that precise ground, that they were not insolvent. If, then, they had such means, it was their duty to use them for the purpose of paying their debts; and, being solvent merchants and traders, they committed an act of bankruptcy by stopping payment, and not resuming payment within fourteen days. Of such an act fraud will certainly be the prima facie import; and the construction given in many cases to the language of the 39th section, makes it an act of bankruptcy to suspend and not resume payment within fourteen days, whether the same be fraudulent or not. Without affirming the construction, I incline very decidedly to hold, that congress intended that, for a solvent trader to suspend payment and not resume for fourteen days, should be deemed fraudulent as against creditors. Doubtless, cases may arise in which solvent traders may be compelled, while acting in the utmost good faith, to suspend payment; and, in consideration thereof, fourteen days are allowed within which they may resume and thereby repel any inference of fraud. But, within that period, if solvent, in the just sense of that term, applied to this subject, they must resume or their continued suspension is, per se, fraudulent.

I have only to add, that the motive of the petitioners in prosecuting the petition, or the co-operation of Bininger, or his motive therefor, can have no possible effect in determining the quality of the acts alleged to be acts of bankruptcy, or the legal consequence of such acts. The rejection of evidence tending to show collusion between Bininger and the petitioning creditors was not erroneous. However fully established, the decree must

have followed, as the right of the creditors. If the design was to show a purpose to administer the bankrupt's estate so as to defraud Clark, that design appertains to the future. The means are abundant to protect Clark against any such fraud, and the court and the law are competent in adequacy and power to see that, in the execution of the law, full justice and protection are accorded to all who are interested.

The decree must be affirmed.