STEARNS et al. v. FLICK.

(District Court, S. D. Ohio, W. D. September 24, 1900.)

No. 2,786.

1. BANKRUPTCY—PREFERRED CLAIMS AGAINST ESTATE—EXPENSES OF GENERAL ASSIGNMENT.

Claims of an assignee for the benefit of creditors for his compensation and expenditures in administering the estate prior to the filing of a petition in bankruptcy against the assignor are not preferred claims entitled to priority of payment out of the money in the hands of the trustee in bankruptcy, under Bankr. Act, § 64b, which limits such claims to "the actual and necessary cost of preserving the estate subsequent to filing the petition"; nor, in the absence of such express limitation, could the claim be allowed where the assignment was made after the enactment of the bankruptcy law, such assignment being not only an act of bankruptcy thereunder, but in contravention of the policy of the law, which is to draw to the bankruptcy courts the administration of the estates of all insolvents.

2. SAME—PROVABLE DEBTS—EXPENSES INCURRED BY ASSIGNEE FOR BENEFIT OF CREDITORS.

Such claims are not provable debts of the bankrupt, not having been incurred by him, but by the assignee himself in an attempt to prevent the administration of the estate in the bankruptcy courts; and it is immaterial that he acted in good faith, and in conformity to the insolvency laws of the state.

In Bankruptcy. On application of the assignee of the bankrupt under the state insolvency laws for allowance of compensation and expenses.

William E. Bundy and Sherman T. McPherson, for Claude W. & Chas. W. Flick.

Kiefer & Kiefer, Stafford & Arthur, and Oscar T. Martin, for trustee.

THOMPSON, District Judge. On December 11, 1899, Claude W. Flick made an assignment to his brother, Charles W. Flick, for the benefit of his creditors. The assignee qualified in the state court, took possession of the property assigned, and entered upon the administration of the trust. On the 22d day of December, 1899, Edgar G. Stearns, doing business as E. G. Stearns & Co., and others, commenced this proceeding in this court to have said Claude W. Flick declared a bankrupt; and on the 20th day of January, 1900, the said Claude W. Flick was duly adjudged a bankrupt. Afterwards a trustee was appointed by the creditors of the bankrupt, to whom, under the order of this court, Charles W. Flick, the assignee in the state court, turned over all the property in his hands belonging to the bankrupt,

except $1,472.21, on deposit in the Mad River National Bank, which was to remain there until the further order of the court. An application is now presented by Charles W. Flick to be allowed and paid out of the moneys in bank the expenses incurred by him, and compensation for services performed by him, as assignee in the state court. The total amount of the moneys of the bankrupt received by Charles W. Flick was $1,736.11. Of these moneys he paid out for expenses of administration in the state court $165.12, and turned over to the United States marshal $98.78, leaving the balance of $1,472.21 now in bank. He now asks to be allowed and paid out of the moneys in bank, for additional expenses in the administration of the assignment in the state court, including $250 as compensation for his services as assignee, the sum of $584.25. The questions presented are: First, whether the expenses paid and incurred by the assignee in the attempted administration of the assignment in the state court, and compensation for his services as assignee, are preferred claims, payable out of the moneys in the hands of the trustee in bankruptcy; second, and, if they are not, whether they are provable claims against the estate of the bankrupt.

1. Section 64 of the bankrupt act prescribes what debts and claims against the bankrupt shall have priority, and whether the claim now made by Charles W. Flick shall have priority must be determined from an examination of the provisions of that section. That section provides as follows:

"Sec. 64. Debts Which Have Priority.—(a) The court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the United States, state, county, district, or municipality in advance of the payment of dividends to creditors, and upon filing the receipts of the proper public officers for such payment he shall be credited with the amount thereof, and in case any question arises as to the amount or legality of any such tax, the same shall be heard and determined by the court.

"(b) The debts to have priority, except as herein provided, and to be paid in full out of bankrupt estates, and the order of payment shall be (1) the actual and necessary cost of preserving the estate subsequent to filing the petition; (2) the filing fees paid by creditors in involuntary cases; (3) the cost of administration including the fees and mileage payable to witnesses as now or hereafter provided by the laws of the United States and one reasonable attorney's fee for the professional services actually rendered, irrespective of the number of attorneys employed, to the petitioning creditors in involuntary cases, to the bankrupt in involuntary cases while performing the duties herein prescribed, and to the bankrupt in voluntary cases as the court may allow; (4) wages due to workmen, clerks or servants which have been earned within three months before the date of the commencement of proceedings, not to exceed three hundred dollars to each claimant; and (5) debts owing to any person who by the laws of the states or the United States is entitled to priority.

"(c) In the event of the confirmation of a composition being set aside, or a discharge revoked, the property acquired by the bankrupt in addition to his estate at the time the composition was confirmed or the adjudication was made shall be applied to the payment in full of the claims of creditors for property sold to him on credit, in good faith, while such composition or discharge was in force, and the residue, if any, shall be applied to the payment of the debts which were owing at the time of the adjudication."

The claim does not fall within any of the provisions of this section. It cannot be allowed as a part of the actual and necessary cost of preserving the estate, because the expenses were incurred and the services of the assignee were rendered prior to the filing of the petition in

bankruptcy, and this section limits priority to the "cost of preserving the estate subsequent to filing the petition." But, if the claim was not excluded from priority by the express terms of the bankrupt law, nevertheless its recognition would be opposed to the policy of that law. The assignment was an act of bankruptcy, and the acceptance of it and the attempt to administer it was wrongful in the sense that it tended to defeat the operation of the bankrupt law. The jurisdiction of the courts of bankruptcy is exclusive and the institution of proceedings in bankruptcy suspends the operation of the state insolvency laws. When acts of bankruptcy have been committed by an insolvent debtor, the administration of his estate, for the benefit of his creditors, is within the exclusive jurisdiction, when invoked, of the courts of bankruptcy. In Re Bininger, 7 Blatchf. 262, Fed. Cas. No. 1,420, Judge Woodruff says:

"Whether some other administration, either through a receiver or a voluntary assignee, is wiser and better or not, whether the end will be the same if those modes are carried into honest and faithful execution or not, the operation of the bankrupt act is equally defeated. * * * The design and purpose of the bankrupt law is that the property of insolvents shall be secured to their creditors in the very mode pointed out thereby, with all the facilities for its appropriation, all the security for its administration, all the safeguards against fraud, all the protection against devices to establish false claims, fictitious debts, and illegal or inequitable preferences which that act provides, and in the summary manner in which the proceedings may be conducted. It is not, therefore, for the debtors, or for the debtors and some of the creditors, to say, 'We can devise a better or safer or more economical mode of reaching the same final result.' If it were true, it would be only saying, 'We will resort to an expedient to defeat the bankrupt law, and our reason therefor is that we think our plan is wiser and better than that which congress has seen fit to prescribe.' "

And see In re Smith, 2 Am. Bankr. R. 9, 92 Fed. 135; In re Wright (D. C.) 95 Fed. 807; Rev. St. U. S. § 711, cl. 6; Id. § 720; Const. U. S. art. 1, § 8, cl. 4.

No equity can arise, therefore, in favor of the assignee, which would entitle him to compensation for services rendered, or to reimbursement for expenses incurred, in an attempt to defeat the operation of the bankrupt law. The assignee, during the 11 days which elapsed from the time of his appointment until the filing of the petition in bankruptcy, expended of the moneys of the bankrupt which came into his hands $165.12, and it is a serious question whether or not he should be required to refund that amount to the estate of the bankrupt. He was bound to know that the assignment was an act of bankruptcy, and that its attempted administration tended to defeat the operation of the bankrupt law, and his expenditure of the moneys of the bankrupt for that purpose was wrongful. At the time the petition in bankruptcy was filed, the moneys were not on hand, and the title thereto could not vest in the trustee in bankruptcy; but it is a question whether a right of action did not vest in the trustee against the assignee for the wrongful conversion of these moneys. However, notwithstanding the knowledge of the effect and operation of the bankrupt law imputable to the assignee, it is no doubt true, as a matter of fact, that he acted in good faith, believing that it was his duty to proceed with the administration of the assignment in the state court, and

upon that ground no order will be made requiring him to pay these moneys to the trustee.

2. The claims of the assignee are not provable debts of the bankrupt. They were not debts incurred by him. When he made the assignment the property passed out of his possession, and the debts were incurred by the assignee in an attempt to prevent the administration of the estate in the bankrupt courts. The assignee professed to act under the authority of the insolvency laws of the state of Ohio; but, if he could be regarded as the agent of the bankrupt in incurring these debts, yet, the purpose for which they were incurred being in opposition to the policy of the bankrupt law, they cannot be recognized as provable debts of the bankrupt, as against his bona fide creditors. The claims, therefore, of the assignee, will be disallowed, and he will be ordered to pay over to the trustee the $1,472.21 now on deposit in the Mad River National Bank.