## Case No. 2,830.

### CLARK v. MARX.

### [6 Ben. 275.][1]

District Court, S. D. New York. Dec., 1872.

Void Assignment — Expenses of Assignee — Depreciation of Property.

1. In March, 1869, the firm of R. B. & A., made an assignment to M., of all their property in trust for all their creditors. In April, 1869, a petition in bankruptcy was filed against them, and they were adjudged bankrupts. An injunction was issued against M., to prevent his selling the assigned property. The assignee in bankruptcy commenced a suit against M., to set aside the assignment to him, and compel an accounting by him. In May. 1870, the injunction against M. was modified so as to allow him to sell parts of the property. In May, 1871, on final hearing. a decree was made setting aside the assignment to M., and directing an accounting, which was had. On the report of the master, exceptions were filed by the plaintiff to various allowances to M., as reported. *Held*: That the effect of the decree, was to declare the transfer to M. to have been void, and to substitute the title of the plaintiff for any title in M., as of the day of the filing of the petition.

2. That M., therefore, could not be allowed for any disbursements or expenses which he made or incurred by virtue of such transfer, or to maintain his title or possession thereunder.

[Cited in Hunker v. Bing, 9 Fed. 279.]

3. That, in so far as M. acted with the permission of this court in making sales of the property, he ought to be allowed such expenses as were necessary and proper in so acting.

[Cited in Hunker v. Bing, 9 Fed. 282.]

4. That, as the plaintiff furnished no evidence as to any definite loss or depreciation of the property, by reason of the interference of M. with it, or that its value was greater than the price it brought on sale, the court could not speculate as to what such loss was.

[Action by Lester M. Clark, assignee in bankruptcy of Rosenthal and others, against Marcus Marx].

Charles H. Smith, for plaintiff.

W. A. Coursen, for Marx.

BLATCHFORD, District Judge. The petition in bankruptcy against Rosenthal. Black & Alexander was filed April 7th, 1869. On

the 2d of March, 1869, they made to the defendant Marx an assignment, wherein they declared that they were unable to pay their debts in full, and whereby they transferred to Marx all their property, in trust to convert it into money, and therewith to pay the expenses of making and carrying into effect the assignment, and then to pay all their debts in full, if possible, and, if not, then pro rata. Marx accepted the transfer and took possession of the property. On the 7th of April, 1869, the usual injunction in involuntary cases was issued and served on Marx. On the 21st of April, 1869, this court modified such injunction, so as to permit Marx to sell certain fixtures and property, and retain the proceeds thereof to abide the further order of this court. This suit was commenced on the 4th of November, 1869, to set aside the assignment to Marx, as fraudulent and void as against the plaintiff, and to compel an accounting to the plaintiff therefor. Marx answered the bill, and therein maintained the validity of the assignment, and demanded to be permitted to proceed with the execution of the trusts created by it, and denied the plaintiff's title to the relief asked, and prayed for the dismissal of the bill, with costs. The property transferred to Marx embraced a quantity of cloths and ready made clothing, which continued in his possession, boxed up and unsold, until May, 1870, when this court relieved Marx from the operation of the injunction in respect to it, so far as to permit it to be sold by him. Proceeds of sales of property were deposited by Marx in the United States Trust Company, under the direction of this court, and subject to its order, as follows: May 28th, 1870, $1,325 63, and September 28th, 1871, $470 87. On the 6th of May, 1871, on final hearing, a decree was made herein, adjudging that Marx should account to the plaintiff for all of said property, and that the plaintiff became vested with it, by operation of law, through his appointment as such assignee, and was entitled to recover it from Marx, and appointing a master to take (1) an account of all the property which passed to Marx; (2) an account of the moneys received by Marx from the property; (3) an account of the property and proceeds remaining in the hands of Marx; (4) a debit and credit account, charging Marx with the value of all the property which passed to him, and crediting him the value of so much as had been sold, and the proceeds deposited, under the order of this court, and with the present value of any property remaining in his hands, and with all sums properly allowable in account to him, as against the rights of the plaintiff.

The master now reports the accounts so taken, and further, that Marx has delivered to the plaintiff all the property which passed to Marx, and the proceeds thereof, except the sums "necessarily expended by him in the collection, care and preservation" of the

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

property, and except the proceeds deposited in the United States Trust Company; that there is no property, nor any proceeds thereof, in the hands of Marx, to which the plaintiff is entitled; that no money is due from Marx to the plaintiff; that the whole value of the property is correctly set forth in the account of Marx; that Marx is not chargeable with any damages or other loss in regard to the property, or its proceeds; that Marx ought to be credited with $3,015 10, and debited with $2,540 73, showing a balance due him of $474 37; and that Marx is not entitled to be allowed the further sum of $500, claimed by him to be an indebtedness incurred by him in the care and preservation of the property. The plaintiff excepts to the report in respect to each one of 53 items credited to Marx, amounting to $1,218 60, being all the items credited to him by the master except the two, amounting to $1,796 50, for moneys deposited in the trust company. He also excepts to the report because the master has not charged Marx with any loss or depreciation of the property, by way of damages, for his interference therewith.

By the express provision of the 14th section of the bankruptcy act [14 Stat. 522] the assignment to the assignee, in its conveyance to him of the title to the property and estate of the bankrupt, relates back to the commencement of the proceedings in bankruptcy, which is (section 38) the filing of the petition for adjudication, and such title, by operation of law, vests in the assignee as of the time of such filing. The title to the property transferred to Marx, if it was the property of the bankrupts, vested in the plaintiff as of the 7th of April, 1869. The effect of the decree in this case is, to declare the transfer to Marx to have been void, and to substitute, for any title in Marx, the title of the plaintiff, on the ground that, notwithstanding the transfer to Marx, the property still remained the property of the bankrupts, as against the plaintiff, if he successfully challenged such transfer within the time, and on the grounds, prescribed in the bankruptcy act. While the title of Marx might have ripened into a good title, if it had not been questioned by the plaintiff, yet Marx took such title at the risk of the result of such a suit as this. The transfer to Marx being now adjudged to have been void, he cannot, under such transfer, claim to be allowed for any disbursements or expenses which he made or incurred by virtue of such transfer or to maintain his title or possession thereunder. The result of the litigation, is that he is adjudged to have been in default in not surrendering to the plaintiff the property in question. It ought to have been so surrendered when the assignment to the plaintiff was made, which was July 8th, 1869. In so far as Marx acted with the permission of this court, given in its orders, in making sales of the property, he ought to be allowed such expenses as were necessary and proper to enable him to so act in compliance with the terms of such orders.

On these principles, there are many items allowed which are inadmissible. The items, in March, 1869, for stationery, cases, 2 days' work, books, stamp, copying schedules, 4 weeks' work, postage, premium on insurance, and cartage, would seem to be not allowable. They all seem to have arisen out of the acting of Marx under the unlawful transfer to him. It may be that something ought to be allowed as rent or storage, in respect of the goods, from April 7th, 1869, to July 8th, 1869, but there is no evidence to warrant the allowance of the two items of $141.66 each, for rent, or of the items of $150 and $10, for storage. The items, in April, 1869, for work and preparing stock for auction (the latter being for a sale under the unlawful transfer) cannot be allowed. The items for moving and cartage of fixtures may be allowable, if necessary in respect of the sale of fixtures authorized by this court. The items which follow thereafter, for insurance, taking care of stock, cartage, repacking stock, camphor, and 4 cases, must be disallowed. The items, in May, 1870, for auction invoices, cartage and labor, 2 days' work, and preparing stock, &c., may be allowable, if necessary in respect of the auction sale of the goods authorized by this court. The items for copy schedule, copy auction sales and making accounts, do not seem to be allowable. The item of $250 paid to counsel cannot be allowed. It is stated to have been for services rendered in May, 1870, in respect of the sale of the property. It was not a necessary or proper expense of the sale, and a surrender of the property to the assignee, which Marx was at liberty to make at any time, would have rendered that expense, and all other expenses which he incurred after July 8th, 1869, unnecessary.

This case is an illustration of the manner in which estates of bankrupts would be frittered away, if such expenses incurred by wrongdoers in regard to them were to be allowed. Marx receives, as the avails of sales, $2,540 73. Out of this he claims to retain, as expenses, the $1,218 60 before named, and $500 in addition, for the services of counsel in drawing the void assignment and defending it against the plaintiff—in all $1,718 60, or nearly 70 per cent. of the avails. The master disallowed the $500.

The plaintiff furnishes no evidence as to any definite loss or depreciation of the property by reason of the interference of Marx therewith, or that its value was greater than the price it brought on sale. The court cannot speculate as to what the loss was. There must be evidence.

The first exception of the plaintiff is so far allowed as to refer the case back to the master for a new report on the principles and views hereinbefore set forth, with leave to either party to put in further testimony, as

to any of the items allowed by the master in Schedule G to the report. The second exception is disallowed.