## HUNKER, Assignee, etc., *v.* BING, Jr.

*(District Court, S. D. New York.* September 27, 1881.)

1. BANKRUPTCY—ASSIGNEE IN INSOLVENCY—VOID ASSIGNMENT—ASSIGNEE'S AL-
LOWANCE FOR DISBURSEMENTS AND SERVICES.

A voluntary assignee in insolvency, under a void assignment, will not be
reimbursed his expenses incurred under the assignment, nor is he entitled to
compensation, as assignee, for services. For such services and disbursements,
however, as benefit the general body of creditors, either by reason of the pres-
ervation of the fund to their use, by advantageous collections of assets, or by
conversion of property into money, he will be allowed what is reasonable and
just.

2. SAME—SAME—ATTORNEY'S FEES.

Payments made by him to an attorney will be governed by the same rule.

In Equity. Exceptions to master's report upon accounting.

*F. W. Hinrichs* and *G. P. Sheldon,* for complainant.

*Simon H. Stern,* for defendant.

BROWN, D. J. This action was commenced on October 31, 1878,
by the complainant, as assignee in bankruptcy of the firm of J. Bear
& Sons, to have a voluntary assignment made by that firm to the
defendant, as assignee in trust for their creditors, on January 2, 1878,
declared fraudulent and void, and the assigned property or its pro-
ceeds turned over to the complainant. Upon an answer substantially
admitting the plaintiff's claims, with an account annexed, an inter-
locutory decree was entered on March 15, 1879, adjudging the assign-
ment void as against the plaintiff, and referring it to a special master
to pass the defendant's accounts. The master, in his report, dated
October 10, 1879, and filed January 3, 1880, allowed to the defend-
ant his charge of $1,618.14 for his "commissions as assignee," and
the sum of $2,000 paid by him to his attorney for his charges and
expenses. To each of these items exceptions have been taken as
unwarranted and excessive.

A large part of the property of the bankrupts was sold at auction,
under the direction of both the plaintiff and defendant, shortly before
the commencement of the action, by order of this court, being all the
property then remaining unsold, and the defendant's account accord-
ingly embraces the entire assets of the firm. By this account the
gross receipts were $32,415.02; the charges and expenses, as passed
and allowed by the master, amount to $11,001.95; leaving net pro-
ceeds to the amount of $21,313.07. The charges and expenses,
besides the items excepted to, are made up of $2,650 for rent, about
$2,200 for salaries of persons employed by the respondent, about

$1,700 paid for duties and freight, $450 for insurance, and a few hundred dollars for miscellaneous small items of expense.

The respondent's charge of $1,618.14, for "his commissions as assignee," was intended as a charge of 5 per cent. upon the gross collections; and his counsel, upon the argument, claims that sum as his legal right under a statute of the state of New York, passed May 22, 1878, (chapter 318, § 7,) declaring that assignees "shall receive for their services a commission of 5 per centum on the whole sum which shall have come into their hands." Prior to this act there was no statutory provision in this state fixing the compensation of assignees, but it had long been settled in practice that they were to be allowed the same rates as those prescribed by statute for executors and administrators,—Keiley, Ins. Assgts. (3d Ed.) 137; *In re Scott,* 53 How. Pr. 441; *Meacham* v. *Sternes,* 9 Paige, 398, 403; *Barney* v. *Griffin,* 2 Comst. 372,—which in this case would amount to less than one-third of the new statutory allowance. The counsel for the complainant contends that the respondent is not entitled to the benefit of this statute, but is limited to the former rule, which was in force on January 2, 1878, when he accepted the trust.

There is nothing in this statute intimating that it was intended to be retroactive. By the ordinary rule of construction it would not, therefore, apply to assignments previously made. The compensation of the assignee, as long fixed by practice, might fairly be deemed to be among the implied terms, both of the making and of the acceptance of the assignment. If the statute in question had materially reduced the compensation of assignees instead of increasing it, it would scarcely be contended that anything less than the clearest indications in the statute would justify its application to assignments already accepted and partly executed. And if a retroactive effect would not be given to such a statute to the prejudice of the assignee, it should not, I think, be applied retroactively to the prejudice of the assignor or of the creditors beneficially interested in the assignment. See MS. memoranda of *Choate,* J., in *Rutherford* v. *Clements,* December 29, 1880. I have not been referred to any adjudication on the subject in the state courts, and it is not necessary to determine the question here, as there are other considerations in this case which render this statute, as well as the application of any other fixed rule of compensation, inapplicable.

The assignment has been adjudged fraudulent and void as against the complainant, and its further execution by the defendant lawfully interrupted. The assignee in bankruptcy lawfully takes the estate

into his own hands and is entitled to his legal fees. A duplication of charges, by the payment of full fees to two successive assignees, is not to be tolerated. *In re Kurth,* 17 N. B. R. 573. A voluntary assignee who accepts the trust, knowing from the beginning that it is liable to be set aside as fraudulent and void in bankruptcy, has not, in strictness, any legal claim to compensation. Under some circumstances, accordingly, he has been allowed nothing. *Burkholder* v. *Stump,* 4 N. B. R. 597; *Clark* v. *Marks,* 6 Ben. 275; *In re Stubbs,* 4 N. B. R. 376. In other cases he has been considered as simply a creditor of the assignors for his services, and put to his *pro rata* with other creditors. *In re Lains,* 16 N. B. R. 168. In this district the equitable rule has been adopted to allow him reasonable charges for such services and disbursements as have been rendered for the benefit of the general body of creditors by the preservation of the fund to their use, or in the advantageous collection of assets, or conversion of the property into money. *Platt* v. *Archer,* 13 Blatchf. 351; *Havemeyer* v. *Loeb,* MS. Dec. 11, 1877.

The cases in which this rule has been applied, however, are the ordinary cases of assignments which are valid under the state laws, and are operative as against all individual creditors so as to preserve the estate intact, and defeat the acquirement of any preference by one creditor over another through judgments and executions, and which are voidable only under the bankrupt act at the election of the assignee in bankruptcy in a direct suit for that purpose. *Wald* v. *Wehl,* 6 FED. REP. 163, 169. Unfortunately for the general creditors this assignment is not of that character. The state law under which this assignment was made provided that a verified inventory and schedule of the assets and liabilities of the debtor should be filed by the debtor within 20 day after the assignment, and if that were not done that the assignee might, within 10 days thereafter, make and file such inventory and schedule so far as he can, and if not made by either debtor or assignee within 30 days that the assignment shall be void.

The firm of J. Bear & Sons, the assignors, consisted of three copartners. Immediately upon the execution of the assignment the assignors and other persons about the store, nine in number, were employed by the respondent in preparing the inventory and schedules, which he testifies were prepared under his supervision and the advice of his counsel. Their preparation occupied two weeks, and they were filed on January 16, 1878. On March 11, 1878, a petition of creditors was filed in bankruptcy against the firm; the usual injunction

was .issued, which was served on the defendant on March 12th; an adjudication of bankruptcy was entered on May 31, 1878; the assignment to the plaintiff was made on August 9th; and this suit commenced on the thirty-first of October following. In the mean time, during February and March, prior to the filing of the petition in bankruptcy, a judgment was recovered by the Eleventh Ward Bank against the assignors for about $8,000, upon which execution was issued to the sheriff, and several other judgments were recovered against them, upon which executions were also issued during the same period, all of which, by the law of this state, became liens upon any goods and chattels of the assignors, the legal title to which still remained in them. If the assignment executed on January 2d had been a valid assignment under the state law, these executions would not have attached, and upon the decree in this action setting aside the voluntary assignment, the benefits of the decree, it is settled, would have enured only to the assignee in bankruptcy, and the execution creditors would have remained without lien or preference as before. *In re Biesenthal*, 15 N. B. R. 228. But upon examination of the inventory and schedules by counsel for the judgment creditors, it was found that they were wholly wanting in any statement of the individual assets or liabilities of two of the three partners; that they were verified by only one of them; and that this one had stated nothing in regard to his individual assets or liabilities. Upon the ground of these defects in the schedules, this court, upon the petition of the Eleventh Ward Bank, adjudged the assignment void, under the state law, after the lapse of 30 days, to-wit, on February 1, 1878, and that all the execution creditors, between that date and the eleventh of March, when the petition in bankruptcy was filed, acquired valid legal liens upon the goods and chattels of the assignors. See opinion of *Choate*, J., *In re Bear*, filed December 23, 1879. These execution creditors have already withdrawn about $12,500 from the net proceeds of the estate before mentioned, and other similar claims are still undecided; and the numerous petitions and litigations which have thus sprung from the invalidity of the assignment through the defective schedules have entailed large additional expenses, which are likely to leave but a small residue of the net proceeds of $21,313.07 for distribution among the general creditors.

Upon these facts it is clear that the defendant can have no legal or equitable claim to "commissions as assignee." The assignment became, after the lapse of 30 days, through the remissness of the assignee, not merely voidable, but void, without suit or other direct

proceeding to avoid it. Thereafter, in contemplation of law, there was neither assignment nor assignee; neither trust, trust property, nor trustee. The assigned property reverted by operation of law to the assignors; it became liable to the attachments and executions of creditors, and upon the appointment of the complainant as assignee in bankruptcy it became *ipso facto* vested in him, subject only to such liens as had in the mean time attached upon it. No claim to compensation in the character of "assignee" can therefore be allowed to the defendant; nor for the period of 30 days, during which the assignment was in force, (*In re Croughwell,* 17 N. B. R. 337,) can any claim be entertained for commissions, since the assignment subsequently lapsed and became void through what must be held legally to have been the fault of the assignee himself in not filing "such a schedule as he could."

It does not follow, however, that all remuneration should be denied to the respondent. No claim under the void assignment, or for anything having reference to the void statutory proceeding, can be regarded. But for other acts performed by the respondent, in the way of services and disbursements, which, considered independent of the assignment itself, were lawfully rendered, and were beneficial to the general body of creditors, or which would have been necessarily incurred by the complainant as assignee in the care of the property, or in its conversion into money, allowance should be made. The express assignment affords the defendant no protection. He must bear all the charges and disbursements pertaining to it, or to the defective inventory and schedules contained in his account. But, as it was not illegal for the debtors by parol to put their property into the possession of the respondent as their factor or agent to sell it and distribute its proceeds among their creditors,—though subject to be withdrawn by the debtors at any moment on payment of charges, and subject to the attacks of execution creditors, or to proceedings in bankruptcy,—so the respondent may be regarded as having done what he did under an implied request to that effect, and to have acquired thereby an equitable lien upon the property in his possession for his necessary services and disbursements therein, which should be respected in bankruptcy so far as they have been necessary and beneficial to the general creditors, or such as the assignee in bankruptcy would otherwise have incurred. *Shellington* v. *Howland,* 53 N. Y. 371; *Madison Ave. Bapt. Ch.* v. *Bapt. Ch. in Oliver St.* 9 Jones & S. Supr. Ct. Rep. 369, 384; S. C. 73 N. Y. 82, 92; *Platt* v. *Archer, supra.*

From the defendant's account rendered, and from his testimony, it appears that the first two weeks were employed in preparing the inventory and schedules to be filed. As these were useless, and had reference solely to the void statutory proceeding, the expenses so incurred must be disallowed. The salaries of the nine persons thus employed amount to about $175. From January 16th to March 12th, when the injunction in bankruptcy was served, the respondent was busily employed in selling the goods at wholesale and retail to the amount of $8,000, and in collecting accounts, and during that time he personally kept the books. During several days before that they had also been employed in preparing a careful inventory and catalogue of all the remaining goods for an auction sale, designed to be held on the fourteenth of March, for which all the preparations were completed, the sale to be made by Bissel & Wells, auctioneers, on a commission of 6 per cent., including guaranty. The proceedings for the auction sale, after being suspended for several months through the injunction in bankruptcy, were finally resumed upon an order of this court, September 20, 1878, directing the sale to be had under the direction of both assignees, and the sale was accordingly completed in October, 1878, and the respondent collected the moneys. Although the reason for this course, or for the long delay in determining upon it, does not fully appear, I infer that it arose from the peculiar nature of the goods,—a large stock of toys,—and that it was found best for the plaintiff to avail himself of the preparations, facilities, and arrangements which the defendant, aided by the debtors, had already made, or could afford, for the most advantageous disposition of such goods. These arrangements and the sale were made, it is true, before the invalidity of the assignment had been pointed out or adjudicated; but it was none the less an adoption and employment of the defendant's services in part, for which he is consequently entitled to compensation down to the close of the sales and commencement of this action on October 31, 1878. Clark v. Marx, 6 Ben. 275.

The amount of these auction sales was about $17,500. For all his services in preparation for and in carrying out these last sales, in connection with the plaintiff, I think the defendant is entitled to one-half the fees of assignees in bankruptcy, to be computed upon that sum; and for his services prior thereto, back to January 16th, when his sales commenced, I think the sum of $350 a reasonable compensation; but his charges for the nine persons employed two weeks in making the schedules, amounting to $175, as nearly as I can make out, must be disallowed.

The items charged for payments to the defendant's attorney must abide by the same rule. So far as they depended upon or related to the void assignment, they must be disallowed. So far as they were expenses necessarily incurred for the preservation of the property or collection of the debts, they should be allowed to an amount which is reasonable and just.

The charges as presented cannot, therefore, be allowed. They are in two items—one, "January 17, 1878, $1,000;" and one, "March 11, $1,000." Both the items paid were evidently paid upon the basis of an assignment assumed to be valid under the state law and voidable only in bankruptcy. The first was paid but 15 days after the assignment was made, immediately after the defective schedules were filed, and would seem to have been paid quite as much as a retainer for future services under the assignment, as for any services already rendered, as the attorney values his services in connection with the schedules at $150 only. The second item was paid on the day the petition in bankruptcy was filed, of which it is shown that the respondent had knowledge at the time. No bill of itemized charges was rendered by the attorney, and none was exhibited before the master. The attorney testified to numerous matters upon which he was consulted, and described what he did, in general terms, without any specification of the value of his different services; and the master has allowed the charges in gross. The adjudication that the assignment was void under the state law was not made until some two months after the date of the master's report; and this adjudication makes it impossible to take into consideration quite a number of the matters specified by the attorney in his testimony as proper subjects of charge as against the plaintiff, which might possibly have been otherwise allowed.

Disallowing, therefore, all charges solely depending upon or referring to the void assignment or its execution under the state law, and all advice for the defendant's individual benefit, and admitting those charges only which pertain to the preservation or collection of the assets and to the benefit of the general creditors, the following subjects of claim specified in the testimony should be excluded, viz.: Counsel's examination of the assignment, and advice in relation to the acceptance of it, and instructions as to the defendant's duties and responsibilities under it; preparing and filing schedules and advice concerning the same; "matters connected with the estate" not otherwise defined; advertising for claims and order of state court therefor; order to supplement schedules; "assisting" in the appoint-

ment of receiver in the Schroeder foreclosure, that not being to the benefit of the creditors, but opposed thereto; preparing and filing defendant's bond as assignee; advice as to the effect of the injunction in bankruptcy, and services in this suit. These subjects form by far the greater part of all those specified by the attorney. The remaining items embrace several collection suits, advice concerning disputed claims, and negotiations and arrangements concerning litigations which were of a professional character and beneficial to the creditors. The evidence is not sufficiently explicit to enable me to estimate with exactness the value of the services last referred to; but having examined carefully all the testimony in regard to them, and allowing a liberal sum for each, I find the aggregate will not exceed the sum of $500, to which amount the complainant's counsel claims that these charges should be reduced, and that sum is accordingly allowed.

The master's report passes the account as of December 27, 1878. By the testimony it appears that the balance of $20,663.07, then in the respondent's hands, had been paid over to the complainant prior to the report. A final decree should be prepared in accordance with this decision, which may be settled on two days' notice before me, if the parties do not agree.