Circuit Court, District of Columbia. Oct. Term, 1828.

INSANE PERSONS—ADJUDICATION—APPOINTMENT OF COMMITTEE.

1. The court will appoint a committee here to take care of the property of a person found lunatic in Maryland.

2. The mode of ascertaining the lunacy is by a writ in nature of a writ de lunatico inquirendo.

This was a petition to the court to appoint a committee of the estate of Major Wheaton, who was found lunatic in Baltimore; there being property in this county. The court will take notice of the proceedings of a foreign court finding a party lunatic. Ex parte Lewis, 1 Ves. Sr. 298. In Ex parte Gillam, 2 Ves. Jr. 587, the solicitor-general said, "For he had been found lunatic by a competent jurisdiction in the country in which he was. Lord Thurlow thought that a sufficient ground to consider him a lunatic; the country, which is alone the judge, having found him so." Lord Chancellor: "That distinction I think a very sound one; for the personal capacity, in general, is regulated by the law of the country." The reason why, in New York, a foreign inquisition is not sufficient, is, that the statute only authorizes the chancellor to appoint committees for those who should be found lunatic by that court.

THE COURT (THRUSTON, Circuit Judge, absent,) appointed Dr. Laurie, committee. The act of Maryland, 1785, c. 72, § 6, authorizes the chancellor to superintend the affairs of lunatics, and to appoint a committee, &c., but does not direct the mode of ascertaining who are lunatics. This must be done by a writ in the nature of a writ de lunatico inquirendo, which issues by order of the court upon affidavit.

## Case No. 2,165.

### BURKHOLDER et al. v. STUMP.

[28 Leg. Int. 125:[2] 4 N. B. R. 597 (Quarto, 191); 8 Phila. 172.]

District Court, E. D. Pennsylvania. 1871.

BANKRUPTCY—ANNULLING ASSIGNMENT FOR CREDITORS—THE DECREE—ACCOUNTING BY VOLUNTARY ASSIGNEE.

1. A decree annulling a voluntary assignment by a debtor of all his estate in trust for the equal benefit of all his creditors, made within six months before the commencement of pro-

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reprinted from 28 Leg. Int. 125, by permission.]

ceedings under which he was adjudged a bankrupt, should contain a direction for a conveyance by the voluntary assignee, surrendering the estate to the assignee in bankruptcy.

2. The accounting by the voluntary assignee should be, under the decree, to the assignee in bankruptcy. There should be no subsequent account in a proceeding under state legislation in a court of the state, unless some extraordinary reason requires a distribution under the laws of the state for the benefit of the general body of the creditors.

[Cited in Re Kurth, Case No. 7,948.]

3. A mere general allowance in the decree of the reasonable charges and expenses of the voluntary assignee should not be understood as including his expenses of a proposed account in a state court.

[Cited in Re Cohn, Case No. 2,966; Hunker v. Bing. 9 Fed. 279; Platt v. Archer, Case No. 11,214.]

In bankruptcy. The defendant was the trustee under an assignment, made within six months before the commencement of the proceedings in bankruptcy, by the bankrupt, of all his estate for the equal benefit of his creditors. The suit was under the auxiliary summary jurisdiction, by a petition containing informally the essential averments which would have been required in a bill in equity to set aside the assignment; and prayed a citation. The defendant appeared forthwith without any citation having been issued, and filed an answer. Upon the petition and answer, the case was heard at the weekly session for cases in bankruptcy, and a decree made for the petitioner. It set aside the assignment, ordering the defendant to surrender the estate to the petitioner, and account to him, with an allowance to the defendant of his necessary and reasonable charges and expenses. In settling the form of the decree, two questions arose. The first was, whether the decree should contain a direction for a conveyance to the petitioner by the defendant. The court said that such a direction was proper and usual; that although the decree annulled the assignment, and ordered a surrender of the estate, yet the conveyance by a deed of surrender might effectuate or facilitate purposes of such a decree. The petitioner might, or might not, see occasion to enforce this part of the decree. If he desired its enforcement, he might cause the deed of surrender to be prepared in a succinct form, reciting the decree; and should the parties disagree as to the form of the conveyance, the Register might settle it. The second question was, whether the allowance of the expenses and charges of the defendant should include any reservation of the expense of a future settlement of the defendant's account in a court of the state, under her laws relating to such assignments.

To this Mr. Duffield, for the petitioner, objected.

Mr. Bispham, contra, urged that the defendant was liable to be cited to account in the state court, and might thus be involved in charges which he ought not to incur, as no fraud was imputable to him, and as he

had, so far as was proper, submitted himself to the present jurisdiction.

J. Davis Duffield, Esq., for plaintiff.
Geo. T. Bispham, Esq., for defendant.

Before CADWALADER, District Judge.

THE COURT said: The defendant, if so cited in a court of the state, could, in bar of the proceeding, show that the whole estate had been compulsorily taken away from him by the decree of this court, under whose jurisdiction he was accountable, and had accounted, &c. If this court's decree recognized a continuing accountability elsewhere, the consequence might be to delay the proceedings in bankruptcy. Unless there were, as may possibly have occurred in some peculiar cases, extraordinary occasion for permitting distribution under the laws of the state, it ought not to be sanctioned. It can only be permitted where it might promote the interests of the general body of the creditors. This might be the case in consequence of something intervening between the voluntary assignment and the commencement of the proceedings in bankruptcy, such as an intervening judgment or execution, though it might, perhaps, even then, be preferable in most cases, to protect the general equities by injunction, and work them out in bankruptcy, or under the auxiliary equitable jurisdiction. Every person receiving one of these assignments ought to know that the assignment is liable to be set aside if a bankruptcy follows; and the allowance to him of his charges and expenses ought to be refused where it cannot be so guarded as to prevent any injurious duplication of charges. In some of the judicial districts of the United States, the allowance is refused wholly; and occasional precedents of contrary directions here, will not be followed, if to follow them would result in any injustice to creditors.