---

COHEN (UNITED STATES v.). See Case No. 14,826.

---

## Case No. 2,966.

### In re COHN.

[6 N. B. R. 379.] [1]

District Court, D. Kentucky. 1873.

BANKRUPTCY—COMPENSATION OF ASSIGNEE FOR BENEFIT OF CREDITORS.

Assignees under the state law cannot receive allowance for attorneys' fees, nor compensation for their own services where the debtor has been adjudged a bankrupt.

[Cited in Gardner v. Cook, Case No. 5,226; Platt v. Archer, Id. 11,214; Re Kurth, Id. 7,948; Wehl v. Wald, 3 Fed. 94.]

[By J. H. Ward, Esq., Register:]

On the twenty-first of February, A. D. eighteen hundred and seventy, J. S. Cohn made an assignment to Louis Sechel of all his property, for the benefit of all his creditors. On the seventh of June, eighteen hundred and seventy, a petition for adjudication of bankruptcy was filed against him by his creditors, and on the eighteenth of June, eighteen hundred and seventy, he was adjudged a bankrupt. On the twenty-fifth of June, eighteen hundred and seventy, R. M. Mosby was appointed assignee in bankruptcy of said bankrupt, and accepted the trust. Mosby sued out a rule from the United States district court against Sechel, to show cause why he should not surrender to Mosby, assignee in bankruptcy, the property conveyed by Cohn on the twenty-first of February, eighteen hundred and seventy, to Sechel. Sechel responds that he has sold said property, and realized therefrom the sum of seven hundred and fifty-one dollars and six cents; that the expenses of said sale were thirty-nine dollars and seventy cents; attorneys' fees paid, fifty dollars; attorney's fee for which suit was brought and costs, &c., seventy-five dollars—one hundred and sixty-four dollars and seventy cents; that he paid taxes, internal revenue, sixty-four dollars and four cents; paid county and state taxes, forty-one dollars and twenty-five cents—one hundred and five dollars and thirty-one cents: total, two hundred and seventy dollars and one cent. He says, also, that he is ready to pay over to the as-

---

[1] [Reprinted by permission.]

signee in bankruptcy the amount received by him from the sale of the bankrupt's property, less the above items of expense of two hundred and seventy dollars and one cent, in administering his trust, and the cost of this proceeding. The attorney for Mosby asks that Sechel be ordered to pay over to Mosby the full amount of money received from the sale of the estate of said Cohn, less the United States, state and county or city taxes, paid by Sechel, making no contest about the two last items in Sechel's account as above stated, because he considered that liens existed on the bankrupt's estate for the payment of taxes, and the assignee in bankruptcy would have to pay them at any rate.

The only remaining questions then are, shall Sechel be allowed credits in his account for expenses of sale of bankrupt's estate, for the attorney's fee paid, and for another attorney's fee which he thought he might be adjudged to pay? Three items, amounting to one hundred and sixty-four dollars and seventy cents. The attorney for the assignee in bankruptcy says, "No; the assignment to Sechel on the twenty-first of February, eighteen hundred and seventy, was void;" and cites Perry v. Langley [Case No. 11,006], to show that such an assignment is void. The question before the court in that case was not whether the voluntary assignment was void or voidable, but whether it was an act of bankruptcy. The court in that case says: "It results conclusively that if the provisions of the bankrupt act were in force on the twenty-fifth of May, eighteen hundred and sixty-seven, the date of the assignment, and that the assignment was within the scope and intent of the law, and, as an act of bankruptcy, altogether null and void, the probate court of Gallia county had no jurisdiction of the assignment, and the acts of that court in regard to it are altogether invalid." I have failed to find any case where the question, "whether an assignment of all the property of the assignor for the benefit of all his creditors was void or voidable?" came up directly before the court, and such assignment was decided to be void.

In Re Pearce [Id. 11,141], Cadwalader, J., says: "Even where the assignment has been the sole foundation of the proceedings in bankruptcy I have considered it not a void act, but an act voidable by the assignee in bankruptcy by a bill in equity filed for the purpose of avoiding it." The questions before the court in that case were, whether a voluntary assignment was an act of bankruptcy if proper proceedings were instituted in six months, and whether such an assignment is a bar to a discharge under section twenty-nine of the bankrupt act, in the absence of actual fraud. Catlin v. Foster [Id. 2,519], decided by Deady, J., in district of Oregon, is cited by the attorney for Sechel, to show that the credits claimed by S. in his account should be allowed. In that case

the voluntary assignee set up two counter claims in his answer; one for two hundred and fifty dollars, to pay an attorney's fee for which he said he was liable, and two hundred and fifty dollars for his own services under said assignment. On motion, the first of these counter claims was stricken out, as it did not appear that the defendant had ever paid the amount to the attorney, but only that they claimed that he was liable for it. The second, for services of the assignee under the voluntary assignment, to the extent of one hundred dollars was allowed, under the twentieth section of the bankrupt act [of 1867 (14 Stat. 526)], as a "mutual credit." It appears to me that this section refers only to creditors of the bankrupt before the act of bankruptcy. It is the theory of the bankrupt law, that a balance is struck between the bankrupt and his creditors at the time he files a voluntary petition in bankruptcy, or a petition is filed against him in an involuntary proceeding in bankruptcy, upon which he is adjudged a bankrupt. All settlements with a bankrupt's estate must be made precisely as though they were made at the moment in which such petitions were filed. I do not suppose it would be contended that a "payment, sale, assignment, transfer, conveyance, or other disposition of his property," made by a bankrupt "to any person who has reasonable cause to believe him insolvent, or to be acting in contemplation of insolvency," and that such "sale," &c., "is made with a view to prevent his property from coming to his assignee in bankruptcy, or to prevent the same from being distributed under this act, or to defeat the object of, or in any way impair, hinder or delay the operation and effect of, or to evade any of the provisions of this act," could stand after adjudication of bankruptcy, and proper proceedings to recover the bankrupt's estate. How, then, can it be argued that in committing the very act of bankruptcy itself, the bankrupt may incur a liability which shall be paid in full out of his estate to the prejudice of his other creditors? Section 35 forbids a bankrupt or insolvent in any way to dispose of his property, yet does not this decision, by permitting him to incur a debt to be paid in full, and to the prejudice of all other creditors, allow him, to that extent, to dispose of his estate? He cannot pay any debt, even where the debt is of the most sacred character; and this section, by making a difference of two months in favor of creditors in the limitation, shows that creditors are to be preferred, at least to that extent, to strangers or persons not creditors. Can we, then, believe that a proper construction of sections 20 and 35 would forbid a bankrupt to pay the most sacred obligation, and at the same time permit him to at once create and to pay in full a new obligation to a person who knows that the bankrupt and himself are then acting in open violation of the bankrupt law?

The question whether an assignment like the one under consideration is void or voidable, appears not to have been directly decided by any court since the passage of the present bankrupt act. The question whether a voluntary assignee, under such an assignment, should receive compensation for services and expenses under such assignment, has been decided both ways, depending, it appears, upon the merits of the particular case under consideration. We have the above case by Deady, J., allowing the assignee to have one hundred dollars for his services. On the other hand, we have Fox, J., in Re Stubbs [Case No. 13,557], in a similar case, who says: "The proceedings under the state law were had in fraud of the act, and the court in bankruptcy cannot allow a party the expenses incurred by him in his attempt to defeat the provisions and operations of the bankrupt law." Also in Burkholder v. Stump [Id. 2,165], in the eastern district of Pennsylvania, it is said: "Every person receiving one of these assignments ought to know that the assignment is liable to be set aside if a bankruptcy follows; and the allowance to him of his charges and expenses ought to be refused where it cannot be so guarded as to prevent any injurious duplication of charges. In some of the judicial districts of the United States the allowance is refused wholly, and occasional precedents of contrary directions here will not be followed, if to follow them would result in any injustice to creditors. The decisions on this point being thus variant, since the passage of the present bankrupt law, we must examine the authorities upon the relative subject of fraudulent conveyances. In the case of Hastings v. Spencer [Id. 6,201], "Where an assignment, made by an insolvent debtor, was held voidable, as actually fraudulent against creditors, and the assignee either had knowledge of the extraneous facts, which rendered the assignment voidable, by creditors, or the means of knowing them, and was put upon inquiry, it was held, that he had no lien as against an attaching creditor, upon the proceeds of the property assigned for his services in partially executing the trust, or for retainers paid to counsel." "If the assignees were themselves participators in the fraud, or, in other words, if they undertook to execute the trusts, knowing that they were fraudulent and unlawful, the law cannot recognize such services as ground for a legal claim for compensation, and cannot treat them as creditors of the assignor." In Harris v. Sumner, 2 Pick. 129, and Burlingame v. Bell, 16 Mass. 318, it was held, "that an assignment, fraudulent on its face or actually fraudulent, could confer no lien on the assignees, so as to enable them to hold the property against the attachment thereof specially by a creditor." The case of Bartlett v. Bramhall, 3 Gray, 257, is referred to by attorneys for Sechel, in which it is decided that an as-

signee under the insolvent laws of Massachusetts may sue an assignee under a voluntary assignment and recover the money and property of the insolvent, "deducting his expenses for collection, which the plaintiff must have incurred if the defendant had not, but deducting nothing for his labor and services, which are shown by the events that have occurred, to have been unwarranted and illegal. The deduction for expenses of collection is not allowed as compensation to the defendant for collecting, but because the claims collected were not worth more to anybody than the sum which the claimants could obtain therefrom, after incurring the necessary expenses of collection." Is an assignment like the one under consideration, void or voidable? I think it is not void but voidable. The thirty-fifth section only says such an assignment is void, if it is made "within six months after the filing of the petition by or against" the bankrupt. Then if a petition is not filed "within six months by or against" a bankrupt, such an assignment would stand. It then has virtue or vitality enough to live if not attached within six months. This must be in it from the first, for it continues good unless the petition is filed "within six months." It is in the nature of a conditional conveyance, the condition being that no petition in bankruptcy shall be filed "within six months." It continues to exist, and is good if such petition is not filed within that time. It is then only voidable by the filing of such petition in said time. This is my construction of this section.

Shall the assignee under the state law be paid for his services, and reimbursed his expenses out of the estate of the bankrupt? The thirty-fifth section of the act plainly forbids all such assignments. Their effect is to defeat the operation of the bankrupt law. The assignee, Sechel, must have contemplated the natural results of his own acts, and is presumed to know the law. He was then acting in fraud of the law, in the language of Hastings v. Spencer, above cited. "The assignees knowing that they (his acts) were fraudulent and unlawful, the law cannot recognize such services as ground for a legal claim for compensation and cannot treat them as creditors of the assignor." If such assignees cannot be treated as creditors of the assignor, the foundation for the decision Catlin v. Foster is gone, and the principle of "mutual credits" or the twentieth section of the bankrupt act does not apply. I therefore conclude that the second item of Sechel's account, (amount paid attorney, fifty dollars,) and the third item, (for which he is sued by Phelps & Son, seventy-five dollars,) cannot be allowed him as credits in the settlement of his accounts. On the principle laid down in Bartlett v. Bramhill above, which appears to me equitable, I allow him the item of thirty-nine dollars and seventy cents for the expense of sale of property, as it appears

from the affidavit filed with Sechel's answer that the sale was a good one. The account will then stand thus:

Louis Sechel, Dr.—To proceeds of sale $751 06
Cr.—By taxes paid...... $105 31
By expenses of sale.. 39 70
——— 145 01

Balance due................ $603 95

All of which is respectfully submitted.

BALLARD, District Judge. I approve the foregoing opinion and report of the register.