### ABBOTT v. SUMMERS.

#### In re ROSENTHAL et al.

(District Court, E. D. Missouri, E. D. March 4, 1902.)

#### No. 435.

1. BANKRUPTCY—VOIDABLE CONVEYANCE IN TRUST—ALLOWANCE OF COMPENSATION TO TRUSTEE.

A trustee in a chattel deed of trust executed by an insolvent for the benefit of creditors, and which was itself an act of bankruptcy, and voidable, under the bankruptcy law, as a transfer of property with intent to hinder, delay, and defraud creditors, is not entitled to compensation from the estate for his services in executing his trust, whether rendered before or after the filing of a petition in bankruptcy against the debtor; nor is he entitled to an allowance to pay for the services of attorneys employed by him in the administration of the trust; the

entire transaction being in fraud of the rights of creditors to have the
estate administered under the bankruptcy law by the trustee chosen
by them. The trustee, however, may properly be allowed a reasonable
sum for his services as custodian in preserving the property after the
institution of the bankruptcy proceedings, but the allowance should not
be such as to substantially amount to full compensation for his services
as trustee.

In Bankruptcy. On exceptions to report of special master in a pro-
ceeding instituted by the trustee in bankruptcy of Rosenthal & Lehman
to recover the proceeds of property sold by defendant as trustee in a
chattel deed of trust executed by the bankrupts for the benefit of
creditors.

Sale & Sale, for A. L. Abbott.

Lyon & Swarts, for Smith W. Summers.

ADAMS, District Judge. The facts of this case and the applicatory
law having been exhaustively considered by Walter D. Coles, Esq.,
the special master to whom the issues were referred, and his conclu-
sions meeting my full approval, his opinion is adopted as the opinion
of the court. It is as follows:

The undersigned special master, to whom, by an order entered herein on
February 8, A. D. 1902, the matter hereinafter stated was referred, re-
spectfully reports as follows:

On September 18, 1901, an involuntary petition in bankruptcy was filed
against the bankrupts, and on October 25, 1901, an adjudication was made
thereon. Thereafter, on January 20, 1902, Augustus L. Abbott was elected
and duly qualified as trustee of the estate of said bankrupts. On Feb-
ruary 8, 1902, Augustus L. Abbott, trustee of the estate of said bankrupts,
filed in this court a petition alleging that the bankrupts on or about the
18th of September, 1901, being insolvent, within the meaning of the bank-
ruptcy law, conveyed and transferred to one Smith W. Summers, by an in-
strument in writing, alleged to be a chattel deed of trust, all and singular,
the goods, wares, and merchandise then belonging to bankrupts, together with
certain contracts, leases, and choses in action; that said deed of trust con-
veying to the said Summers the property aforesaid was made with the in-
tention and purpose of appropriating all of the partnership property of said
bankrupts to the payment of their debts ratably among all their creditors;
that said alleged chattel deed of trust was in effect a general assignment
for the benefit of creditors, and was illegal, and conveyed no title to said
Summers as against the petitioner. The petitioner further alleged that said
Summers, under said chattel deed of trust or deed of assignment, took pos-
session of the property described in said conveyance, and disposed of the
same, and converted the same into money, and now has in his possession,
as the proceeds of such conversion, the sum of $40,528.58, which sum is
the property of, and belongs to the estate of, said bankrupts. Petitioner
thereupon prayed that the court make an order directing said Summers to
turn over to him the money in his hands belonging to the estate of said
bankrupts. Thereafter, on February 8, 1902, said Smith W. Summers filed
in this court a return to the petition of said trustee, consenting to the juris-
diction of the court, and waiving the issuance of an order to show cause,
and set forth in said return in detail the manner in which he had disposed
of the property conveyed to him by bankrupts under said chattel deed of
trust or deed of assignment, and the services performed by him as trustee
under said instrument, and alleging that he had received as such trustee
the aggregate sum of $40,528.58, and had expended in and about the con-
duct of the business and in preserving and selling the said property the
aggregate sum of $7,407.25, and now has in his possession the sum of $33,-
121.33 belonging to said estate. The said respondent, Summers, further aver-
red in his return that he had employed the firm of Lyon & Swarts as his attor-

neys in the conduct of his said trust; that said firm of Lyon & Swarts had rendered services to him in and about the conduct of his said trust, and in and about the preservation of said property, and that the reasonable value of said services is $1,000, and that he is indebted to said firm of Lyon & Swarts in said sum of $1,000 for said services. Said respondent thereupon prayed that he be allowed the expense incurred by him "in caring for and preserving said property," including his liability for legal services, and also the sum of $2,500 for the services rendered by himself, and that he be permitted to turn over to Augustus L. Abbott, trustee in bankruptcy, the balance of the said moneys now in his possession. On February 8, 1902, the court made an order directing that the petition of said trustee, together with the return of said respondent, Summers, thereto, be referred to the undersigned, as special master, to take an accounting of and concerning all sums of money received by the respondent, Summers, as proceeds of sale of all the property conveyed to him by bankrupts, and of all other sums of money received by the respondent while in charge of the property or assets of said bankrupt, and of all moneys paid out, services rendered, and obligations incurred by the respondent in caring for and preserving the estate of said bankrupts, and in converting said estate into money, and to report to the court his conclusions thereon, together with the evidence adduced. Thereafter, on February 11, 1902, the petitioner, Augustus L. Abbott, by Messrs. Sale & Sale, his attorneys, and the respondent Smith W. Summers, by Messrs. Lyon & Swarts, his attorneys, duly appeared before the special master; and evidence was heard on behalf of said petitioner in support of his said petition, and on behalf of respondent in opposition thereto. A transcript of said evidence is filed with this report, and made part thereof.

### Finding of the Special Master.

The special master finds the facts to be that on September 18, 1901, Adolph Rosenthal and Lewis J. Lehman, copartners doing business under the name of Rosenthal & Lehman, executed and delivered to the respondent, Smith W. Summers, an instrument in the nature of a chattel deed of trust, conveying to said respondent, as trustee for sundry creditors named in said instrument, the entire stock of merchandise belonging to the grantors, and situated on the premises 823, 825, 827, and 829 North Broadway, together with all the fixtures, furniture, bills receivable, open accounts, and choses in action of every kind belonging to the said grantors, including all rights of the bankrupts in and under the contract or leases by and between bankrupts and J. A. Salkey, Hub Furniture Company, Oscar Nieman, Simon Kaus, and Charles A. Kaus, and including, also, the books of account of bankrupts. The said chattel deed of trust further provided for the conduct of the business and the sale of the property therein conveyed, in the manner therein specified, and the distribution of the net proceeds pro rata among all the creditors therein named, with provision for the return of the surplus, if any, to the grantors. The special master finds from the evidence that the value of the property conveyed by bankrupts to respondent by said chattel deed of trust did not exceed the sum of $60,000, and that the debts therein mentioned and sought to be secured exceeded the sum of $200,000, and that it was the purpose and intention of bankrupts, in and by said instrument, to unconditionally appropriate said property to the payment or partial payment of the debts due by them to the creditors therein, who were all of the creditors of said bankrupts. The property conveyed to Summers as trustee consisted of a miscellaneous stock of goods, constituting what is commonly called a "department store." The respondent took possession of the property on September 18, 1901, and caused an inventory to be taken, in which the property was listed at cost, and was found to aggregate the sum of $53,506.90. On September 24, 1901, the respondent opened the store for the sale of goods at retail in the ordinary manner, and the business was so conducted by him up to and including October 14, 1901. While selling goods at retail the respondent found it necessary to purchase certain staple goods, to replenish the stock and render the residue salable; and for the purpose he bought goods to the aggregate amount of $1,859.95, and also procured and paid for advertising the sum of $602.54. During the period in

116 F.—44

which the respondent conducted the business at retail he sold goods at not less than cost, and realized from such sales the sum of $14,488.31. On October 14, 1901, respondent ceased to sell goods at retail, and advertised that a bulk sale of the property would be made by him on October 18, 1901. In accordance with such advertisement, respondent on October 18, 1901, sold the merchandise, fixtures, etc., at public auction, in bulk, and realized therefor the sum of $23,043; and the same was thereafter, on the 27th day of October, 1901, delivered to the purchaser. The respondent, while acting as trustee, notified by mail all the debtors of bankrupts to pay him the debts due by them, and thereby collected sundry accounts, aggregating $391.-60. It further appears that, prior to the execution of the said chattel deed of trust by bankrupts, certain persons were conducting certain departments in the premises occupied by bankrupts, under contracts with bankrupts, which provided for the payment to bankrupts of a certain percentage on the sales made by said departments in return for the right to occupy the premises, and for certain services to be rendered by bankrupts. When respondent took charge of the premises of bankrupts, these persons denied respondent's right to collect the payments to which bankrupts were entitled under the aforesaid contract, and the controversy thereupon arising was finally adjusted by respondent, with the aid of his attorneys, Messrs. Lyon & Swarts, and the payments in question were thereafter made in conformity to the terms of said contracts; respondent receiving from that source the sum of $1,627.54. The respondent also made arrangements whereby he leased certain space in the building formerly occupied by bankrupts to a "millinery department," and secured rental therefor in the sum of $277.41. The special master further finds that the respondent employed Messrs. Lyon & Swarts as his attorneys, and that said attorneys advised with him as to his duties as trustee, and as to the conduct of the business and the sale of the property by him as trustee. The matters with respect to which Messrs. Lyon & Swarts gave advice to respondent are found by the special master to be as follows: General consultations and advice concerning the conduct of his trust by respondent; the relation of the respondent to the leasehold in which the business was being conducted; respondent's title to the cash on hand at the time the respondent took charge; the respondent's relation to the various leased departments, and his right to enforce the contracts with the said leased departments; respondent's relation to the bankruptcy proceedings instituted against Rosenthal & Lehman, and the effect of said proceedings upon respondent's title to the merchandise; claims of various persons for property on the premises at the time the respondent took charge; respondent's right to purchase goods, and respondent's right to advertise in the newspapers; claims of the owners of the leased departments for the cash proceeds of sales made by them previously, and alleged to be in the respondent's possession; the right of the respondent to lease space in the building; and advice concerning the sale of property in bulk. The special master further finds that the respondent devoted practically all his time to the conduct of his said trust from September 18, 1901, to October 27, 1901, and that, in disposing of the property conveyed to him by bankrupts, he acted honestly, prudently, and carefully. The special master further finds that the respondent conferred with attorneys representing a considerable number of creditors as to the manner in which he was conducting or proposed to conduct the business and dispose of the property, and the said attorneys, on behalf of said creditors, gave their assent to the course of conduct followed by respondent, but that certain other creditors did not assent to respondent's conduct of said estate. The special master further finds, in accordance with the admission of the trustee and the respondent, that the respondent, while acting as trustee under said chattel deed of trust, received from all sources the gross sum of $40,528.58, and expended the sum of $7,407.25, and that the said sum was properly expended in the care and preservation of, and in converting into money, the property conveyed to him under said chattel deed of trust, and that respondent now has in his possession the sum of $33,121.33 in money; being the net proceeds derived by him from the sale of the property conveyed to him under said chattel deed of trust, after paying the expenses aforesaid.

### Conclusions of the Special Master.

The propriety of allowing compensation for their services to voluntary assignees and trustees, in cases like the present one, has been a subject frequently considered by the courts, both under the act of 1867 and under the present law. The question is regarded by the special master as an important one, since the conclusion arrived at will lead to important consequences, affecting the actual course of administration and the expenses of administering bankrupt estates. For these reasons the special master deems himself justified in referring somewhat at large to the authorities bearing upon the question presented for determination.

Under the act of 1867, the making of a voluntary assignment or the execution of a deed of trust by a debtor for the benefit of his creditors, while not in terms declared to be an act of bankruptcy, was nevertheless held to be such an act, both on the ground that it was a conveyance which "hindered, delayed, and defrauded creditors," and that it was a conveyance tending to "defeat the operation of the act." Globe Ins. Co. v. Cleveland Ins. Co. (C. C.) 14 N. B. R. 311, Fed. Cas. No. 5,486; Bump, Bankr. (10th Ed.) pp. 409, 420, and cases cited. The execution, therefore, of a deed of assignment or deed of trust by an insolvent debtor, supplied grounds for an adjudication of bankruptcy, and the assignee in bankruptcy was entitled to avoid the deed and recover the assigned property. The decided weight of authority under the act of 1867 is that, where a voluntary assignment or deed of trust is avoided through proceedings in bankruptcy, the assignee or trustee and his attorney ought not to be allowed compensation for their services in administering the estate under such assignment or deed of trust. In re Cohn, 6 Fed. Cas. 21 (No. 2,966); In re Stubbs, 23 Fed. Cas. 274 (No. 13,557); Burkholder v. Stump, 4 Fed. Cas. 749 (No. 2,165). In the Case of Cohn, supra, it is said: "How can it be argued that in committing the very act of bankruptcy itself the bankrupt may incur a liability which shall be paid in full out of his estate, to the prejudice of other creditors? * * * The person who accepts the trust knows that the bankrupt is acting in open violation of the bankrupt law. * * * The assignee knowing that his acts are fraudulent and unlawful, the law cannot recognize such services as a ground for a legal claim for compensation." In Burkholder v. Stump, supra, it is said: "Every person receiving one of these assignments ought to know that the assignment is liable to be set aside if bankruptcy follows, and the allowance to him of his charges and expenses ought to be refused where it cannot be so guarded as to prevent any injurious duplication of charges."

There are a few reported cases under the act of 1867 where compensation was allowed a voluntary assignee, but most of these cases rest upon peculiar facts, which make the allowance proper in the particular case, and they were decided in full recognition of the principles which have led the courts to deny compensation to voluntary assignees. In the case of Clark v. Marx, 5 Fed. Cas. 898 (No. 2,830), upon the commencement of proceedings in bankruptcy the voluntary assignee was enjoined from selling the assigned property. Subsequently the injunction was modified so as to permit assignees to sell some of the property. The court says: "The transfer to Marx [assignee] being now adjudged to have been void, he cannot, under such transfer, claim to be allowed for any disbursements or expenses which he made or incurred by virtue of such transfer, or to maintain his title or possession thereunder. In so far as Marx [assignee] acted with the permission of this court, given in its orders, in making sales of the property, he ought to be allowed such expenses as were reasonable and proper to enable him to so act in compliance with the terms of such orders." In this case the assignee was denied any allowance, except for services and expenses in selling property under the order of the court of bankruptcy. In the case of Hunker v. Bing (D. C.) 9 Fed. 277, the facts were the same as in the case of Clark v. Marx, above referred to; that is to say, the voluntary assignee was permitted to sell the assigned property by order of the court of bankruptcy, and such assignee was allowed compensation in so far as he acted pursuant to such order of the court of bankruptcy. In the case of McDonald v. Moore, 16 Fed. Cas. 41 (No. 8,763), the assignee

appears to have been allowed compensation for himself and his attorney; but there is no consideration, upon principle, of the propriety of making such allowance, and no reference to the authorities on the subject.

Under the present act it has been determined by this court that the execution of a chattel deed of trust identical with the one here in question is an act of bankruptcy, and is voidable at the instance of the trustee in bankruptcy. Rumsey & Sikemier Co. v. Novelty & Machine Mfg. Co., 99 Fed. 699. In the foregoing case it is said: "The next question is whether the deed [chattel deed of trust] is a conveyance by the company with intent to hinder, delay, or defraud its creditors, or any of them. It is contended that because it devoted all the debtor's property to the payment of its creditors' demands, pro rata and equally, and because there is no fraud of the kind requisite to avoid deeds at common law, or under the statutes of fraudulent conveyances, therefore this deed does not hinder, delay, or defraud creditors, within the meaning of the bankruptcy act. In considering the question, it must be borne in mind that the bankruptcy act confers certain peculiar rights and privileges upon creditors, which were unknown to the common law, and unrecognized by state statutes concerning fraudulent conveyances. Among these are the right (1) to choose their own trustee; (2) to examine the bankrupt; (3) to have notice of all the important steps in the administration of the estate; and (4) to have the assets converted into money, and distributed under the supervision and control of a court of bankruptcy. Any course of procedure by an insolvent, like that resorted to in this case, whereby he conveys all his property to some trustee of his own selection, with power to dispose of it according to his own judgment, and with none of the safeguards provided by the bankruptcy act, clearly deprives the creditors of the valuable rights accorded to them by that act. In addition to this, if such a course of procedure is open to an insolvent, he may in all cases resort to it in anticipation of bankruptcy, and thereby altogether defeat the operation of the involuntary provisions of the act. Considerations like these lead me to the conclusion that such a course of procedure, even though invulnerable at common law and unattended with fraud in fact, inevitably operates to hinder, delay, and defraud the creditors with respect to their rights under the bankruptcy act. The rights above enumerated are taken from them, and they are deprived of all such safeguards, in their effort to secure from the wreck of business some part of what is justly due them. Such being the necessary consequences of the act of the insolvent in making a voluntary conveyance of his property for the benefit of his creditors, it follows that he must have intended such a consequence."

The considerations which have led the courts to declare a chattel deed of trust a fraud upon the bankrupt law are not purely fictional or artificial in character. Indeed, one of the most essential and important features of the present bankrupt law is that the entire administration and distribution of the assets is controlled by creditors, and not by the debtor. A court of bankruptcy, therefore, cannot fail to regard with disfavor any endeavor on the part of the bankrupt to control the administration of his estate, or to project his influence in relation thereto beyond the commencement of proceedings in bankruptcy.

In the light of the foregoing principles, it will be seen that the decisions rendered under the act of 1867, and previously referred to, are pertinent authorities under the present law. The cases adjudged under the present statute are practically unanimous in holding that a voluntary assignee or trustee will not be allowed any compensation for his services as such. In the case of Wilbur v. Watson (D. C.) 111 Fed. 493, 7 Am. Bankr. R. 54, a voluntary assignee was denied compensation for services rendered prior to the filing of the petition in bankruptcy. The court, in the course of its opinion, says: "Such an assignment was constructively fraudulent and in violation of the bankruptcy act, in that it provided for a different mode of administration of the effects of the insolvent debtor than that contemplated by the act. * * * The assignees were not assignees for value, but simply agents of the assignor for the distribution of the proceeds of the property among the creditors. Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814. Their custody was not for the purpose of preserving

the estate for administration under the bankruptcy law. On the contrary, their custody was to enable them to act contrary to the policy of that law. Having voluntarily become parties to an arrangement which was contrary to the policy of the bankruptcy law, and assuming to carry out the directions of the assignor, I fail to see any reason for holding that they had acquired any standing in equity, or that there is any merit in their claim for compensation for what has possibly resulted in some benefit to the creditors. It would be, in my opinion, a substantial violation of the spirit and letter of the bankruptcy act to allow the present claims for compensation. The act provides that a trustee, for the performance of all that these assignees have done, as well as other services, shall receive the sum of $5, and 3 per centum on the sums to be paid as dividends and commissions. The amounts claimed by the assignees exceed this many times. It is contrary to the policy of the bankruptcy act that an insolvent should select the persons who shall administer the estate for the benefit of the creditors, or that he should fix their compensation. If we are to allow for the services of assignees, this will tend to encourage the making of assignments, instead of direct applications, to the bankruptcy courts. Furthermore, the present trustee, under the law, is entitled to a fixed compensation, provided by the act. This compensation covers all his services in reducing to money the property of the estate. To pay an assignee for doing the same thing would be to make the creditors pay double for the performance of a portion of the services. While there are a number of decisions of referees and of courts which give, perhaps, some countenance to the contention that what an assignee has done for the benefit of the creditors should be paid for by the estate, it seems to me that the broader view is that one who has voluntarily become a party to an arrangement which is contrary to the policy of congress in enacting a uniform bankruptcy law should rather lose his time and effort than that the door should be opened to evasions of the bankruptcy act. In the present case there is no question but that the assignees have acted honestly and intelligently, and it is probable that the estate has profited by their experience and efforts; but this case must be decided, not upon the special circumstances, but as a matter of general law." In Re Peter Paul Book Co. (D. C.) 104 Fed. 786, 5 Am. Bankr. R. 105, an assignee was denied compensation for his services prior to the filing of the petition in bankruptcy, but was allowed a nominal compensation as custodian, at the rate of $5 per day, after the commencement of proceedings in bankruptcy. The court says: "The rule has been established in former cases, and, no doubt, it is the law now, that, where an assignment made under the state law was made with an intent to defraud the creditors, the assignee stands in the position of particeps criminis, and no allowance for either disbursements or services will be allowed. The Peter Paul Book Company, a corporation, by its act of general assignment for the benefit of its creditors committed an act of bankruptcy (section 3a, subsec. 4), for which it was adjudicated an involuntary bankrupt on the petition of creditors. Under the act of 1867, any business corporation might become a voluntary bankrupt. The right to become a voluntary bankrupt under the act of 1896 is expressly denied a corporation by the language of the bankruptcy act itself. It is contended by counsel for the assignee that the debtor was precluded from becoming a voluntary bankrupt; that, under such circumstances, the execution of a general assignment for the benefit of creditors would not be analogous to the Gutwillig Case, 1 Am. Bankr. R. 388, 34 C. C. A. 377, 92 Fed. 337; that it is clearly distinguishable from a case where the assignor is an individual, who may become a voluntary bankrupt, and therefore compensation should be allowed in this proceeding to the assignee as such. To so hold would be an invitation to insolvent corporations to make general assignments for the benefit of creditors, in order to obtain allowances for favorite assignees, resulting in the duplication of charges. This has always been guarded against. It is the duty of persons seeking relief in the bankruptcy court to proceed in the least expensive way to obtain the benefits of the act. The Gutwillig Case, supra, lays down the doctrine that 'a general assignment for the benefit of creditors is void as against the trustee appointed in the subsequent bankruptcy proceeding, or as against the creditors of such debt-

or,' and that 'such an assignment or disposition of property is in fraud of creditors, who have the right to invoke the protection of the bankruptcy act.' And it is declared to be 'a general principle of bankruptcy laws not only to administer the assets of insolvent debtors on the basis of equality, but to secure that result by giving to the creditors, and not to the debtor, the selection of the person to be intrusted with the administration.' " In Re Tatum (D. C.) 112 Fed. 50, 7 Am. Bankr. R. 52, a voluntary assignee was denied compensation for services in preserving the estate. The court says: "The assignment being an act of bankruptcy, and a fraud on the bankruptcy act, as contemplated therein, the assignee is a party to the wrongful act. An allowance for services rendered in the furtherance of such wrongful act would be a violation of the spirit, if not the letter, of the bankruptcy law. The assignment is void, and acts done in pursuance thereof confer no rights, when proceedings in bankruptcy are instituted within four months of the date of such assignment." In Stearns v. Flick (D. C.) 103 Fed. 919, 4 Am. Bankr. R. 723, a voluntary assignee was not only denied compensation, but was also held not entitled to reimbursements for expenses incurred. The court says: "The assignment was an act of bankruptcy, and the acceptance of it and the attempt to administer it was wrongful, in that it tended to defeat the operation of the bankrupt law. * * * No equity can arise, therefore, in favor of the assignee, which would entitle him to compensation for services rendered, or to reimbursement for expenses incurred, in an attempt to defeat the operation of the bankrupt law."

With reference to the claim of the respondent for compensation for the services of his attorneys, the cases already referred to seem to be decisive of the question presented. In re Cohn, supra. Since the services rendered by the trustee's attorneys related to the administration of the trust by the trustee under the chattel deed of trust, the same considerations that constrain the courts to deny compensation to a trustee for his services render it necessary, in the opinion of the special master, to refuse compensation to his attorneys. It may be that some part of the services rendered by the trustee's attorneys have been beneficial to the estate, in the sense that, had such services not been rendered, it would have become necessary for the trustee in bankruptcy to procure and pay for legal services of the same or a similar character. Whether this is or would be the case is, however, at best, a matter of conjecture; and the particular services which might effect such a saving to the trustee in bankruptcy cannot be clearly distinguished from the general mass of services rendered by the attorneys. The controlling consideration is that the services actually rendered by the attorneys for the trustee were rendered in connection with, and as incidental to, the administration of the assets by the trustee, under the authority of the chattel deed of trust; and as such administration is declared to be constructively fraudulent, under the bankrupt law, and is held to have the effect of depriving creditors of the rights and safeguards secured to them by the provisions of that law, it seems to follow that the letter as well as the policy of the statute forbids compensation to the attorneys who co-operate with and aid the trustee in a course of conduct condemned as illegal by such statute.

There is another consideration which the special master thinks has a collateral, if not a direct, bearing upon the question of the right of the trustee's attorneys to compensation for their services. Mr. Summers, the trustee, must be regarded as a mere agent appointed by the bankrupts to distribute their estate among their creditors. Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814. It is well settled that a bankrupt himself cannot, after the commencement of proceedings in bankruptcy, charge his estate with a liability to pay for legal services rendered in relation to matters collateral to the bankruptcy proceedings. In re Burka (D. C.) 5 Am. Bankr. R. 12, 104 Fed. 326. It seems to the special master illogical to hold that while a bankrupt himself cannot, after the commencement of proceedings in bankruptcy, incur a debt which will have the status of an ordinary claim, as against his estate, he may, nevertheless, by means of a chattel deed of trust, appoint an agent who can charge his assets with debts of a preferential character. If it is determined that a voluntary assignee or trustee and his attorney are entitled to full compensation for their serv-

ices, to be paid as preferential claims out of the estate, it will have the necessary effect of conferring upon insolvent debtors the power in all cases to charge their assets with the obligation of paying for the services of such trustees and attorneys as they may see fit to designate.

In the present case it has been contended that, whatever the general rule may be, the respondent should be fully compensated for his services, because (1) he administered the estate wisely, and with beneficial results to creditors; (2) because certain creditors expressly assented to the sale of the assets by the trustee, and the remaining creditors stood by and permitted him to proceed with such sale, and therefore no one should now be heard to deny his claim to compensation for effecting such sale. In the opinion of the special master, neither of the foregoing contentions ought to be given any weight in this case. So far as appears from the evidence, the respondent acted wisely and secured good results in his administration of the property conveyed to him by bankrupts. There can be no doubt, however, that a voluntary assignee or trustee will in every case assert, when he comes to ask compensation for his services from the court of bankruptcy, that his administration of the assets has been particularly wise and beneficial to creditors; and, unless such assignee or trustee has committed some palpable blunder, there is ordinarily no way for the trustee in bankruptcy to controvert or disprove such assertion. The beneficial or meritorious character of the trustee's administration is too uncertain and shifting a standard to make it the controlling fact in determining his right to compensation. Furthermore, the administration of an insolvent's property by a trustee of his own selection, in the mode and manner dictated by such insolvent in his own deed or conveyance, operates to deprive creditors of all the safeguards provided in the bankruptcy law, and cannot be regarded with favor by courts of bankruptcy, whether the results happen in the particular instance to be good or bad. In the case of Hardy v. Clark, 3 N. B. R. 385, Fed. Cas. No. 1,420, it is said: "The design and purpose of the bankrupt act are that the property of the insolvents shall be secured to the creditors in the very mode pointed out thereby, with all the facilities for its appropriation, all the security for its administration, all the safeguards against fraud, all its protection against devices to establish false claims, fictitious debts, and illegal or inequitable preferences, which that act provides, and in the summary manner in which the proceedings may be conducted. It is not, therefore, for the debtors, or for the debtors and some of the creditors, to say that they can devise a better or safer or more economical mode of reaching the same final result. If it were true, it would be only saying that they will resort to an expedient to defeat the bankrupt law, and that their reason therefor is because they think their plan is wiser and better than that which congress has devised."

The fact that creditors did not enjoin the respondent from disposing of the assets, or take the property out of his hands through the medium of a receiver, does not, in the opinion of the special master, strengthen the respondent's claim to compensation for his services and those of his attorneys. The creditors of bankrupts, by filing a petition in bankruptcy, invoked, as against respondent, the remedy offered them by the bankrupt law, on the very day that the chattel deed of trust was executed; and such creditors proceeded to secure an adjudication of bankruptcy at the earliest date practicable under the provisions of the law. Surely neither the bankrupt, by his voluntary wrongful act in executing the chattel deed of trust, nor the respondent, in acting under such deed of trust, and thereby participating in such wrongful act, can impose upon creditors the burden of securing an injunction or the appointment of a receiver, or, in default of such action by creditors, insist that creditors are estopped to deny respondent's claim to compensation for administering the assets.

For the reason heretofore stated, the special master is of opinion that the liability incurred by respondent to Messrs. Lyon & Swarts for legal services rendered him ought not to be paid out of the funds belonging to the bankrupts' estate now in the hands of respondent, and that respondent ought not to be allowed any compensation for his services as trustee out of said funds. The special master is further of the opinion that it would be a mani-

fest evasion of the provisions of the bankrupt law to deny the respondent's claim to compensation for services as trustee, and at the same time to award him such compensation as "custodian," or for services in preserving the assets, after the filing of the petition in bankruptcy, as would be the substantial equivalent of full compensation for his services as trustee. The authorities seem to justify a reasonable allowance to the respondent as custodian subsequent to the commencement of proceedings in bankruptcy, and as the awarding of such compensation does not appear to be subversive of the policy of the bankrupt law, the special master recommends that the respondent be allowed compensation as custodian at the rate of $10 per day from September 18, 1901 (the day he took charge of bankrupts' property), until and including October 27, 1901 (the day he disposed of such property). Upon this basis the compensation of the respondent would be $400. The special master accordingly finds that the respondent has in his hands the sum of $33,121.33 belonging to the bankrupts' estate, that he is entitled to retain out of said funds the sum of $400 as compensation for his services in preserving the property of the bankrupts subsequent to the filing of the petition in bankruptcy, and that he should be ordered to pay over the balance, to wit, the sum of $32,721.33, to the petitioner herein.